TIERNAN *vs.* POOR, *et ux. et al.—December,* 1829.

Where the facts charged in a bill were all admitted to be true by the pleadings, and there was no replication, but the parties agreed that the Chancellor might take the papers and decide the cause; by such agreement the cause is set down for hearing, and whether the proceedings of the defendant be regarded as a plea, or as an answer, the question submitted, is on their legal sufficiency to bar the plaintiff's claim.

When any instrument of writing is designed to operate as a *transfer of* property, and proper and apt terms are used, whereby the meaning of the parties can be clearly ascertained, if some circumstances are omitted to give it legal validity, which deprive it of its intended, specific operation, a Court of Equity will set it up as a contract, or as evidence of a contract; and when the rights of innocent third parties would not thereby be affected, will, as between the parties to such instrument, carry it into specific execution; *provided* it be founded upon a valuable consideration.

P and his wife, in consideration that T would give up a lien which he held upon P's personal property, agreed to execute a mortgage of certain real property, which, by a post-nuptial settlement, had been conveyed to trustees for the sole use of the wife, with power to her to "sell, convey and dispose of the same, absolutely in such manner as she might *think proper* to direct, without the concurrence of her husband, and from and after her decease, such parts of the property as should be left undisposed of, by her deed or contract," was conveyed in trust to her children. In pursuance of such agreement, T gave up his lien, and P and his wife executed a deed to T, for some of the trust property. The deed was in the usual form of a 'mortgage, except that the wife was not examined apart from her husband, by the justice of the peace who took her acknowledgment, and according to the Acts of Assembly passed in relation to deeds executed by *femes covert* grantors. Upon a bill filed by T, praying a sale of the mortgaged premises; the court held, that whether the instrument of writing which forms the basis of this call, for the interposition of a Court of Equity, be in fact a mortgage, in its legal and technical sense, in consequence of its not having been acknowledged in the manner which the acts of Assembly require, it was not necessary to determine; but it was clearly intended

to be a mortgage, and within the limits of the wife's disposing power; and therefore decreed the property mentioned therein to be sold.

The title to the assistance of a court must be exposed by the pleadings; but the style and character of pleading in equity, has always been of a more liberal cast, than that of other courts; as mispleading in matter of form there, has never been held to prejudice a party, provided the case made is right in substance, and supported by proper evidence.

APPEAL from a decree of the Court of Chancery, dismissing a bill of the complainant, (now appellant.) The original bill, filed on the 21st of February, 1822, stated that *Dudley Poor*, (one of the defendants,) being indebted to the complainant in the sum of $600, and desirous of securing the payment thereof, and the interest, in consideration thereof the said *Poor*, and *Deborah* his wife, (another of the defendants,) on the 28th of March, 1820, executed to the complainant a deed of mortgage, by which they conveyed to the complainant a lot of ground in the city of *Baltimore*, on the north side of *Market street*, next to the corner of *Gay street*, No. 50, with a proviso, that upon payment of the said sum of money, and interest, on or before the 1st of July, next ensuing the date of the said deed of mortgage, the same should be void; which said deed of mortgage was averred to have been duly acknowledged and recorded on the 27th of September, 1820. That although the said 1st day of July next ensuing the date of the said deed of mortgage, and the period therein mentioned for the payment of the said $600, with the interest due thereon, has long since passed by ; yet the said *D. Poor*, and *Deborah*, his wife, have neglected to pay the said sum of money, &c. *Prayer* for a sale of the mortgaged premises, &c. and for further relief.

The deed of mortgage exhibited by the complainant, as stated in his bill, was dated the 28th of March, 1820, executed by *D. Poor*, and *Deborah*, his wife, to the complainant, whereby, in consideration of the sum of $600, to them paid, they conveyed the lot of ground mentioned in the bill, with the proviso therein stated, with a covenant for further and other acts, deeds, assurances and conveyances. The deed of mortgage was signed and sealed by the said *Poor* and wife, and acknowledged by

them before two justices of the peace, &c. on the day of its date. But there did not appear to have been any private and separate examination of the wife, apart from her husband, as required by the acts of Assembly, to conveyances, executed by *femes covert*, conveying their real estates, or relinquishing their rights of dower. The deed was recorded on the 27th of September, 1820.

The *answer* of *Poor* and wife, admitted the execution of the deed of mortgage; but by *way of plea and answer* to the bill, they stated that the defendant, *Deborah*, is one of the heirs at law, representatives and devisees of *John O'Donnell*, deceased, and as such, was entitled to a large real and personal estate, as her distributive share of the said estate. That the said estate was distributed and divided among the legal representatives of the said *O'Donnell.* They further stated, that after the said estate was so divided and allotted, they, the defendants, by a deed duly executed, acknowledged and recorded, bearing date on the 24th of August, 1816, did convey, &c. unto *Columbus O'Donnell* and *John H. Poor*, all their estate, and interest in the said share of the estate of the said *John O'Donnell*, in trust for the sole and separate use, benefit and behoof of the said *Deborah,* for and during the term of her natural life, so that she be suffered and permitted, peaceably and quietly, to use, &c. the said real estate, property and premises thereby conveyed, and the rents, &c. thereof, and of every part thereof to receive, take and apply to her separate use, without being subject to the disposition, &c. of the said *Dudley Poor*, or of any future husband of the said *Deborah*, and in no wise liable or answerable for the payment or fulfilment of his or their debts, contracts or engagements; and so as that the same estate and property thereby granted and conveyed, and every, or any part or parcel thereof might be sold, conveyed and disposed of absolutely, by the said *Deborah*, in such manner as she may think proper or direct; and that without the concurrence of her present, or any future husband. And from and after the decease of the said *Deborah*, then as to the whole of the same estate, property and premises thereby granted and conveyed, or such parts or part thereof,

as may remain undisposed of, by deed or contract, in trust for all the children of the said *Deborah*, and their heirs, as tenants in common, equally. But in case the said *Deborah* shall depart this life, without leaving a child, or a descendant of a child, living at the time of her death, then, in trust for the use, and behoof of such person or persons, or for such uses and purposes as the said *Deborah*, (her coverture notwithstanding, or whether sole or covert,) shall or may, by any instrument of writing in the nature of, or purporting to be her last will and testament, direct, limit and appoint; and in default of such limitation or appointment, then for the use, benefit and behoof of the right heirs of the said *Deborah*, and their assigns, forever. And upon this trust, nevertheless, and with full power to the said *Columbus O'Donnell* and *John H. Poor*, and the survivor of them and his heirs, with the consent, and by the direction of the said *Deborah*, testified in due form, but not otherwise, from time to time, at any time thereafter, to make any lease or leases, demises or grants of the estate and property thereby conveyed, or of any part thereof, with the appurtenances, for any term or terms whatever, renewable or not renewable, so as upon every such lease or leases, there be reserved to continue payable to the said *Columbus O'Donnell* and *J. H. Poor*, and the survivor of them, and his heirs, during the respective lease or leases, the best rents that can be obtained for the same; and so as in every such lease or leases, there be contained reasonable and usual covenants, in like cases; and also a proviso or clause of re-entry for non payment of the rent or rents thereby reserved. And these defendants further say, that the real estate specified and mentioned in the said mortgage was included in the said deed to the said *C. O'Donnell* and *J. H. Poor*, and was a part thereof. And these defendants, *by way of plea*, and in bar of the complainants right to recover in the said bill, say that they are advised they had no legal right to make the ssid deed of mortgage, and that no legal interest or title whatever was thereby conveyed to the complainant—the legal title being outstanding in the said trustees, *C. O'Donnell* and *J. H. Poor*—and moreover, that the said deed of mortgage is defectively executed; and even

if a legal or equitable title existed, in these defendants, that the said deed is wholly defective in its execution, and agreeably to the laws of this state conveyed no title, legal or equitable, to the complainant. And these defendants, therefore, pray hence to be dismissed, with their costs, &c.

The deed of trust exhibited by the defendants, was dated the 24th of August, 1816, executed by them to *C. O'Donnell* and *J. H. Poor*, conveying the real estate, &c. as mentioned in the above answer and plea, and in the manner, and upon the trusts as therein stated. It was acknowledged by the defendants on the day of its date, and the wife was privately examined apart from and out of the hearing of her husband, &c. and was recorded on the 21st of September, 1816.

The complainant having obtained leave for that purpose, amended his bill by making *C. O'Donnell* and *J. H. Poor* parties defendants.

The *answer of D. Poor* and *Deborah* his wife, to the amended bill, admitted *C. O'Donnell* and *J. H. Poor* mentioned therein, as trustees of the said *Deborah* in the deed of trust, are the trustees appointed by the same as therein alleged.

The complainant having again obtained leave for that purpose, further amended his bill, by stating that after the execution of the deed of trust, and before the execution of the mortgage, *D. Poor* had rented from the complainant a dwelling house in the city of *Baltimore*, which house *D. Poor* and his family had occupied for a considerable period. That shortly before the execution of the mortgage, there was due to the complainant from *D. Poor*, the sum of $600, as rent in arrear for the said house, and for which the complainant had levied a distress on the goods and chattels of the said *D. Poor*, then in the said dwelling house, of sufficient value to secure the said rent; and, at the time of the agreement hereinafter mentioned, had and held the said distress in full force and effect. That on the 28th of March, 1820, the complainant being possessed of the said security for his rent aforesaid, the said *D. Poor* and *Deborah* his wife, agreed with him, that they would execute the mortgage filed with the original bill in this cause, for the pur-

pose of securing the payment of the aforesaid rent, in consideration that the complainant would relinquish his said distress, and give up the said goods and chattels, levied on as aforesaid. The complainant alleges that he complied with the said agreement on his part, and the said *D. Poor* and *Deborah* his wife, in pursuance of the said agreement, executed the said mortgage, and the said goods were given up to the said *D. Poor*, and the said mortgage was duly recorded according to law. That the said mortgaged property constituted a part of the property mentioned in the said deed of trust; and that the complainants claim remains unpaid. *Prayer*, that the mortgaged premises may be decreed to be sold, &c. and for other relief, &c.

To this amended bill, all the defendants answered, admitting the facts set forth in the said bill of complaint, to be true as stated; yet they allege and contend that the complainant is not entitled to relief; and therefore pray that the said bill may be dismissed with costs, &c.

*Agreement.* "It is agreed in this case that the Chancellor may take the papers and give a final decree—the counsel for both parties considering that the questions of law connected with it, having been fully discussed before his honor, the Chancellor, in a late case against the same defendants, that it is unnecessary to discuss them again." Signed by the counsel.

BLAND, Chancellor, (September term, 1826.) From the whole proceedings the case appears to be substantially no more than this. The plaintiff, to secure a debt due to him, obtained a mortgage of certain property from *Dudley Poor* and wife, who by their plea allege, that prior thereto the mortgaged property had been conveyed to *Columbus O'Donnell* and *John H. Poor*, in trust for certain uses as in that deed mentioned, and therefore, that *Dudley Poor* and wife had no right or power in equity to make and execute the mortgage relied on in the bill. The plaintiff has admitted the sufficiency of the plea by replying to it. And the truth of the facts therein stated, which alone has been put in issue, is clearly established by the proceedings in the cause. The plea covers the whole substance and merits

of the plaintiffs case, and consequently, being fully sustained in law and fact, puts an end to it altogether.—DECREED, that the bill of complaint of the complainant be dismissed with costs.

From which decree the complainant appealed to this court, where the following agreement was entered into by the counsel of the parties.—"In this case it is agreed that the plea to the original bill shall be considered as a plea to the amended bills—the appellant reserving all objection to the plea itself, both in form and substance, and not admitting it to be a plea at all."

The cause was argued before EARLE, ARCHER and DORSEY, J.

*Gill* for the appellant contended,—1. That the deed of trust from *D. Poor* and wife to *O'Donnell* and *J. H. Poor*, conveyed to Mrs. *Poor* an equitable estate for her sole use, independent of her husband; which estate she had a right to assign absolutely or mortgage at her discretion, by the terms of the trust deed.

2. That having such right, it is bound by her contract set forth in the bill; and the Chancellor erred in not decreeing a sale of it to satisfy her contract.

3. That if there be any error in the mortgage from *Poor* and wife to the complainant, then upon the original contract independently and without that mortgage, the complainant having fulfilled his part of the contract, and *Poor* and wife having received a valuable consideration from him, he is entitled to a sale of the property described in the mortgage, to satisfy his claim.

4. That this cause is substantially before this court, as it was before the Chancellor, upon general demurrer—the answer *to* the amended bill being in effect a demurrer.

5. That there was no plea filed by the defendants in this cause.

6. That if there was a plea, it was abandoned or overruled by the last amended answer; and if not, the agreement to submit the case, was in effect, setting the plea down for hearing.

On the *first* and *second* points, he cited *Price & Nisbet vs. Bigham's Ex'rs,* 7 *Harr. & Johns.* 296, 318.

On the *third* point, he cited *Williams's Ex'rs. vs. The Mayor &c. of Annapolis,* 6 *Harr. & Johns.* 533. *Hunt vs. Rousmaniere's Adm'rs,* 1 *Peters's S. C. Rep.* 13.

On the *fourth* point. This case is to be considered as if the defendants had demurred. The bill as last amended is admitted in every particular. It is not in any respect contradicted by the plea filed to the original bill, and the last amended answer in terms, admits the amended bill; and it is this bill which discloses the plaintiffs claim. There is no dispute about, no denial of the facts. There was nothing for a replication to act upon. Nothing then was left for the Chancellor to decide, but the law of the case arising upon the bill. In effect, therefore, it is as if a general demurrer had been filed, and exclusively relied upon. The law of this case in every particular is settled by this court in the case in 7 *Harr. & Johns.* before referred to. The law of this case is its conscience and honesty, arising from the fact, that the plaintiff at the request of the defendants, *Poor & Wife,* gave up to them a valuable property, for which he now asks payment.

On the *fifth* point. Is there any plea in the case? The Chancellor says there was a plea to which the complainant replied. If there was a plea to the original bill, it is admitted there is one to the amended bills. But it is denied that it was a plea at all. It is an answer, and not a plea. It is wholly deficient in the form and substance of a plea. *Mitf. Plead.* (*ed.* 1812,) 235, 238, 240. *Beames's Eq. Plead.* 339, 340. The defendant must plead to the whole of the bill, or a part, and then answer as to the residue. The plea and answer must be distinct, and cannot be mixed together. *Ringgold vs. Ringgold,* 1 *Harr. & Gill,* 12. Here it is impossible to discriminate between what facts are relied on to constitute a plea, and what, to constitute an answer.

On the *sixth* point. If it is a plea and not an answer, it never was replied to. There was no general replication. The case was set down for hearing under the agreement entered into for

that purpose. The filing the amended answer, abandoned the plea. What is the effect of a plea, and an answer admitting the facts in the amended bill? There could be no occasion for the plea to the amended bill, as it contains all the facts stated in the supposed plea. *Mitf. Plea.* 254. *Chase vs. McDonald & Ridgely,* 7 *Harr. & Johns.* 178, 197, 198.

*Winchester* for the appellees. This is an attempt to make the wife's separate estate, answerable for her husbands debt. The trust is express that the property should not be disposed of to pay the debts of the husband. The mortgage to the complainant was acknowledged by *D. Poor* and wife, but she was not privately examined, &c. as required by law. Was the property at the time of the mortgage, liable to the mortgage, or the contract growing out of it? The bill does not speak of the mortgage as a contract growing out of, or within the deed of trust, under the power reserved to the wife to make a contract. The bill is to foreclose a mortgage, and for no other purpose. Is it a mortgage sufficient to pass the estate in the property of a *feme covert,* admitting that it was not trust property? She cannot be considered or regarded as a *feme sole,* capable of making her separate estate answerable for the debts of her husband. 1. The mortgage is not in execution of the power reserved to the wife under the deed of trust. 2. If it is, it is such a defective execution of the power, as this court will not aid. A *feme covert* cannot dispose of her real estate unless agreeably to the act of Assembly; or under some power reserved to her by deed, and in execution of such power. This deed cannot be considered a mortgage; nor is it in execution of the power reserved to her under the deed of trust. The case of *Price & Nisbet vs. Bigham's Ex'rs,* is not similar to the present. There the contract was for improvements to be made on her estate; and there was an attempt by her and her trustee to execute the power reserved to her.—Here the wife could not contract, except in the way pointed out by the trust. She must have united with the trustees in any transfer of the property. It cannot be a contract by a *feme covert,* unless executed

agreeably to the act of Assembly, or according to the power reserved to her under the deed of trust. The estates of *femes covert* are strictly protected. This is not such a defective execution of the trust as will be aided by this court. No such case can be found where it was ever done.

The question relative to the plea will occur in another case against the same defendants, and will be there argued. But there is a plea, and there was a general replication to it. The Chancellor says so, and he is presumed to know the state of his own records.

*Gill*, in reply. The debt due by *Poor* to the complainant, was extinguished by the surrender of the distress. The distress was abandoned at the instance of Mrs. *Poor*, and it then became her debt, for which she contracted to pay the amount. There was as strong an inducement in this case for the wife to enter into the contract, as there was for Mrs. *Price's* contracting in the case of *Price & Nisbet vs. Bigham's Ex'rs*. No particular form of conveyance is pointed out in the deed of trust before mentioned, and the manner in which Mrs. *Poor* might contract, is unlimited. She could act as a *feme sole;* and if so, she need not have been examined apart from her husband on acknowledging the mortgage to the complainant. Her husband need not have been a party to the mortgage. It was valid without his being a party or consenting to it. What is the effect of her covenant in the mortgage? She has covenanted for further assurances to make her mortgage effectual in case of need—and therefore as Mrs. *Poor's* contract can be enforced as if she were a *feme*, admitting the deed to be defective as a mortgage to pass the estate; yet there is such a contract as a Court of Equity, which assumes that done which ought in honesty to be done, can enforce. The Chancellor undoubtedly supposed there was a general replication, but it is believed he adopted that error, from the fact that another case against the same defendants upon the same deed of trust, was before him at the time he decided this, in which other case, there was a general replication and commission—We deny that its existence is to be assumed, because the Chancellor's decree assumes such existence, the mis-

take in that fact, which might happen to the most cautious under such circumstances, is one of the grounds of this appeal.

ARCHER, J. delivered the opinion of the court.

It will not be necessary in this case, to determine whether the defence of the defendant is partly an answer, and partly a plea in bar, or whether it is a plea in bar supported by an answer, or, if a plea, whether it is overruled by the answer. These questions not necessarily arising on the record; no replication has been filed, and the cause has been set down for hearing by agreement of counsel upon the proceedings in the case; if it be an answer, upon bill and answer, if a plea, then upon the bill and plea, in either case, all the facts set forth in the bill are admitted to be true, not by setting the cause down for hearing, but by the pleadings in the cause, and if the defence be in fact a plea, the cause having been set down for hearing, the question is submitted on its legal sufficiency to bar the remedy which the complainant seeks.

The facts of the case appear to be, that *Dudley Poor* was indebted to *Luke Tiernan*, in the sum of six hundred dollars, for rent in arrear—That for the purpose of securing the amount due, *Tiernan* levied a distress upon the goods of *Poor*—That to relieve his property from this lien, thus acquired by *Tiernan*, *Poor* and *Wife* agreed with him that they would execute the paper, purporting to be a mortgage, filed with the proceedings, and *Tiernan*, in consideration thereof, agreed to give up his distress—That upon the fulfilment of the agreement on the part of *Poor* and *Wife*, the goods levied upon were given up, and his lien by distress surrendered.

That the property upon which the mortgage operated had belonged to Mrs. *Poor*, and had been conveyed by a deed of trust, on the 24th of August, 1816, by *Poor* and *Wife, to Columbus O'Donnell* and *John H. Poor*, for the sole and separate use of Mrs. *Poor*, during life, and in no wise answerable for his debts and engagements, with a power to her to sell, convey and dispose of absolutely, in such manner as she might think proper to direct, without the concurrence of her husband, and from

and after her decease, such parts of the property as should be left undisposed of by her deed or *contract*, was conveyed in trust to her children and their heirs, as tenants in common.

In the case of *Price & Nesbit vs. Bigham's Ex'rs*, the question was presented how far it was competent for a married woman, by a contract under seal, to charge the payment of a debt on her real estate, which was settled on her by a deed of trust for her separate use, *with a power to sell and convey and absolutely to dispose of the same, by a deed duly executed by her, her coverture notwithstanding*, and in delivering their opinion on this point, the court after stating that by the express terms of the trust, she might pass her lands by deed, and they emphatically ask if this power exist, "how can the power to encumber it by mortgage or charge it by contract, be denied to her?" The law allows her, notwithstanding her coverture, to part from her whole estate, upon the principle, that in doing so, she acts as a *feme sole* as to her separate property, and upon the like principle, and to promote fair dealing, it must be conceded to her to charge and encumber it with her debts.

Whether the instrument of writing which forms the basis of this call, for the interposition of a Court of Equity, be in fact a mortgage, in the legal and technical sense of that term, in consequence of its not having been acknowledged by Mrs. *Poor* in the manner, in which the acts of Assembly require the acknowledgment of *feme's covert* to be made, it is not necessary to determine. Nor do we mean to intimate any opinion upon the subject. For the principle is a well settled and familiar one, that where any instrument of writing is designed to operate as a transfer of property, and proper and apt terms are used whereby the meaning of the parties can be clearly ascertained, if some circumstances are omitted to give it legal validity, whereby it is deprived of its intended specific operation, a Court of Equity will set it up as a contract, or as evidence of a contract, and where the rights of innocent third parties would not thereby be effected, will, as between the parties to such instrument, carry it into specific execution, provided it be founded upon a valuable consideration, 2 *P. W.* 242. The

deed in this case was clearly intended to be a mortgage to se-cure the payment of the complainants debt, and was no doubt meant by the parties to be clothed with all the formalities and solemnities necessary to give it a legal and effective operation as such. Its design and meaning was to secure a particular debt, and to charge it as a lien on the wife's separate property. If it be deprived of legal validity for the want of a privy ex-amination, we are still at liberty to look at it as illustrating and evidencing the agreement of the parties, and will coerce its execution according to that original design. Such a course would be demanded by the first principles of equity. For what could be more inequitable than to permit a party to escape from the fulfilment of his contracts, by the mere omission of legal forms?—in which omission too, he may have been the sole actor, and in all cases a participator, and to allow him to reap the advantages from such omission, of all the consideration which constituted his inducement, for entering into the contract.

A voluntary contract could neither be coerced in equity, nor could advantages from it be obtained at law. And this leads us to the enquiry, whether the consideration here was valuable, and of this there cannot be a question entertained. The admis-sion in the cause shew that the complainant surrendered his lien on the property distrained in consideration of the security, which he and all the parties to it believed he had obtained by the mortgage. It was the mere substitution by consent of one security for another, and if relying on the acts of the parties, he has relinquished a certain indemnity, and is now to be told, that his security taken in return, and intended as an equivalent, is gone, the result would be, that equity would enable them to perpetrate a fraud.

But it is said that the wife was not benefitted by any of these stipulations. It is not necessary that she should have been. It is sufficient, acting with her property as a *feme sole:* that she contracted to pass it for her husband's debts, on condition that a benefit should be bestowed upon her husband, and that the creditor seeking the benefit of this contract, and relying upon it, surrendered an existing security or advantage.

It is not meant to intimate in any thing which has been said, that however the complainant might suffer by a reliance upon the conduct of those with whom he contracted, that the execution of this contract could be enforced against the rights of disposition contained in the deed of trust. That would constitute a paramount law, governing and controling every contract in relation to it, and it need be scarcely necessary to say, that no decree could pass against her to carry into effect any contract she might make, unless such contract were within the limits of her *jus disponendi.*

This is a stronger case in favour of executing the contract, than was the case of *Price & Nesbit vs. Bigham's Ex'rs.* There the power was to pass the estate by deed. Here it is by deed or *contract.* Embracing by the latter term, the power to pass the estate by every kind of agreement known to the law, in which, estates of the description mentioned in the deed of trust, could pass.—As a *feme sole,* she had power to contract with any one, and to bind her estate, and to charge it with such contract. The power is sufficiently large and unrestrained to permit her to contract as security for others, and thus to pass her estate for the benefit of the principal, and to secure to his creditors their debts—she might voluntarily sell her lands, and with the proceeds pay her husband's debts. Why might she not upon a consideration incumber it for the same purpose? There is nothing in the spirit and meaning of the deed of trust in opposition to such liberty; on the contrary, every thing to uphold and confirm it—while it is cautiously guarded against *liability* for her husband's debts, her will and power over it is unrestrained. And if she chooses to exercise a kindness to her husband in discharging his debts, and thus charging her lands upon a sufficient consideration, there is clearly nothing in the intention of the settlement which forbids it. She was never intended to be placed in a state of pupilage with regard to her property, but left free to act as she pleased, with regard to it, as fully and as perfectly as if she had been a *feme sole,* and as if she had the legal title; nor are we bound in order, to give efficacy to her acts, to see that she has sought the counsel of

her friends, or solicited the permission of her trustee—such a limitation would restrict her will, in violation of the essence and spirit of the power.

It is supposed that the allegations in the bill do not set up a proper foundation for the interposition of a Court of Equity. The plaintiff's title to the assistance of the court, must always be exposed by the pleadings; but the style and character of pleading in equity has always been of a more liberal cast than that of other courts, as mispleading in matter of form has never been held to prejudice a party, provided the case made is right in matter of substance, and supported by proper evidence. *Cooper Eq. Plead.* 7-8.

The allegations then contained in the original and two amended bills, are in substance these—That the property prayed to be sold was conveyed to trustees in trust for the separate use of the wife of *Dudley Poor*, setting out in substance the uses and trusts to which the property was subjected, it then avers the existence of a debt due from *Poor* to *Tiernan*, that *Tiernan* had surrendered his lien on the property of *Poor*, in consideration of the execution of a mortgage by *Poor* and *wife* on the lands of the wife thus conveyed in trust, which lands thus mortgaged, are prayed to be sold for the satisfaction of the debt. According to our views these averments make out a clear case for equitable interposition. In point of form it *may* not have been strictly correct to treat the instrument of writing in controversy, as a legal mortgage, as it seems to have been done in the original bill. As such it may not be clothed with the necessary legal attributes. If it be not, thus clothed, it is at all events, clearly a contract which equity will treat as a mortgage, and as between these parties, so far as concerns this suit, liable to all the incidents of a strictly legal mortgage, as much so as if all the formalities of acknowledgment, privy examination, and registration, had been pursued.

Entertaining the views we do, we cannot but declare, that in substance, the allegations are correct and sufficient, and the equity clear and unquestionable.

THE DECREE OF THE CHANCELLOR IS REVERSED.