BOROTKA ET AL. *v.* BOULAY

[No. 164, September Term, 1972.]

*Decided February 13, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Richard K. Jacobsen* and *James B. Murphy* for appellants.

*Jesse Spector* for appellee.

BARNES, J., delivered the opinion of the Court.

Two questions are presented for determination in this appeal from the Circuit Court of Baltimore City (Cardin, J.) : (1) whether the appellants, Leonard P. Borotka and Ralston B. Thompson, trustees under an Irrevocable Deed of Trust executed by the late Robert T. Phipps, divorced husband of Rita Ann Phipps Boulay, are entitled to the proceeds of certain life insurance policies insuring Mr. Phipps and (2) whether the trustees are entitled to commissions and their attorneys reasonable counsel fees regardless of the decision reached in regard to the first question.

The facts are not in dispute. Mrs. Boulay and her former husband, Robert T. Phipps, had marital difficulties in 1967 and separated. On October 1, 1967, they entered into a Separation Agreement—both being represented by counsel—in which Mr. Phipps agreed that his wife should have the custody and guardianship of their two sons, Stephen John Phipps and Michael Earle Phipps, with the right in the husband to visit them at reasonable times. Mr. Phipps further agreed to pay his wife $550 a month for her maintenance and support and for alimony. He also agreed to pay for support of the two minor chil-

dren, the amount being apportioned at $300 for alimony and $250 for child support. The alimony for the wife would continue until her death or remarriage, whichever first occurred. The husband also agreed that he would furnish gasoline for his wife's automobile at the company pump of Phipps' Paving Company, to maintain in full force the Blue Cross and Blue Shield medical insurance covering the wife and children, to pay for all medical and dental care of the two children and the cost of educating the children. Paragraph 6—of particular importance to the decision of the present case—was as follows:

> "6. Husband agrees to maintain in full force all life insurance policies on his life which are owned and in effect at the time of this Agreement in which Wife shall be named as primary beneficiary and his sons as contingent beneficiaries. Husband agrees to furnish Wife with certificates of such insurance and to maintain the policy or policies in full force and effect. In the event of Wife's death or remarriage Husband agrees to maintain the insurance in effect for the benefit of his sons until they die, attain the age of twenty-one (21) years, become self-supporting or Husband's death, whichever shall first occur."

Paragraph 10 provided:

> "10. In the event that any action for a divorce shall be brought by either party hereto against the other, it is covenanted and agreed that this Agreement shall be submitted to the Court having jurisdiction thereof for its approval and the Court shall be requested by the parties to incorporate this Agreement in any decree or judgment that may be entered in any such action."

On November 15, 1967, Mr. Phipps obtained an uncon-

tested Mexican divorce, Rita having entered an appearance in the case by counsel. The Mexican Court provided in the decree divorcing the parties a vinculo matrimonii the following:

> "*Third*—It is approved in all its parts, the Separation Agreement entered into by the parties on October first, nineteen hundred and sixty seven, in the City of Baltimore, State of Maryland, United States of America, which has been incorporated by reference into this decree, same as if it were recited in full, in order that it survive and be in full force and legal effect, after the final judgment without merging it with same."

On March 29, 1968, Mr. Phipps consulted Mr. Borotka, a member of the Maryland Bar, and requested him to prepare a Will and an Irrevocable Trust Agreement for him. They met again in early April; and on April 30, 1968, Mr. Phipps signed the Trust Agreement naming Mr. Borotka and Ralston B. Thompson, secretary and general manager of Robert T. Phipps, Inc. as trustees. The instrument, designated "Irrevocable Trust Agreement," recites that the grantor, Mr. Phipps, "wishes to create a Trust for his two sons MICHAEL EARLE PHIPPS and STEPHEN JOHN PHIPPS." By the Irrevocable Trust Agreement, Mr. Phipps did "irrevocably assign, convey, grant, transfer and deliver" to the trustees, their survivor and successors "certain insurance policies on the life of the Grantor" of which $15,000 base amount was held by the Mutual Life Insurance Company of New York (Mutual), $30,000 in Guardian Life Insurance Company of America (Guardian) and $20,000 face amount in the National Asphalt Paving Association Trust Fund operated by the Continental Assurance Company (Continental). By the Trust Agreement, Mr. Phipps agreed to pay all premiums on the policies mentioned, but retained no "elements of ownership in said policies as long as this Trust shall exist and they are held by

the Trustees." He also agreed to prepare the necessary documents for the insurance companies, "advising them of said Trust and also cause to be made the beneficiaries of said insurance policies the Trustees."

Mr. Phipps stated that it was his intention to create the trust because he wished to take care of his two children until they are 21 years of age and wished to keep the policies separate from any estate he might have in order that the trustees could maintain "the children in the way the Grantor would have done had he been alive." He also expressed the intention that the trustees would take the monies in the trust to pay allowances for the education of his children, for their medical expenses and "to see that they are maintained in the best manner possible until they have attained the age of twenty-one (21) . . . when this Trust shall cease and the remaining principal if any, shall be paid over to them share and share alike on their twenty-first (21st) birthday." Mr. Phipps also expressed the "wish" that the trustees not pay Rita, the mother of the children, more than $200 a month for both sons as board and lodging so long as they are in the custody of "the divorced wife and their mother," Rita; but the trustees were authorized to pay or not to pay Rita board and lodging "in their sole discretion without recourse to any court of any kind." The trustees were directed to pay directly to the children or to Rita for board and lodging in their sole discretion and not to pay the money to any creditor or guardian, except the board and lodging money to Rita. They were given the power to invest and reinvest the trust property in their own judgment and to treat the minors as if they were their own children, but to bear in mind that the proceeds should, if possible, be "spread out" so that they would be sufficient to last "until the twin boys are twenty-one (21) years of age." If one son died, all of the income should be paid to the survivor and if both died prior to becoming 21 years of age, the trust property should go into the grantor's estate and pass by his will. No bond was required of the trustees

and the trust powers passed to the surviving trustee. There was also a covenant by the grantor to make such other assignments and execute such other instruments the trustees should deem requisite and proper to effectuate the purposes of the Trust Agreement.

Mr. Phipps, as grantor, and Mr. Borotka and Mr. Thompson, as trustees, signed and sealed the Trust Agreement. It was recorded among the Land Records of Baltimore City on June 19, 1968, in Liber RHB 2386, folio 108.

Mr. Borotka testified at the hearing in the lower court that Mr. Phipps had informed him at the first meeting in March 1968 that he had been divorced from his wife but did not mention any Separation Agreement. Mr. Borotka was not aware of any such agreement when the Trust Agreement was executed on April 30, 1968. In June 1968, Mr. Phipps told him about a Separation Agreement, his copy of which he said had been lost, but did not mention the clause in the Separation Agreement in regard to the insurance policies.

Mr. Phipps died on August 23, 1968, as a result of an airplane crash into the Chesapeake Bay.

Counsel for the surviving former wife, Rita, telephoned Mr. Borotka in September 1968 and the subject of the insurance policies and the Trust Agreement was discussed. It was then that counsel for Rita told Mr. Borotka about the clause concerning insurance policies in the Separation Agreement and this was the first time that Mr. Borotka knew of the existence of that clause. A copy of the Separation Agreement was sent to Mr. Borotka; and on September 28, 1968, Rita Ann Phipps (She did not marry her present husband, Stanley C. Boulay, until February 14, 1969, during the pendency of the present suit.) filed a bill of complaint for declaratory and other relief against the trustees and the three life insurance companies, praying that the Trust Agreement and the designation of the trustees as beneficiaries in the life insurance policies "be declared null and void and of no legal effect." It was also prayed that Rita be

declared to be primary beneficiary under the policies and, as such, entitled to receive all proceeds payable under them and further that the three defendant insurance companies be requested to pay the insurance proceeds to Rita and that the trustees be required to pay over and deliver to Rita "any and all proceeds of said policies which may have or will come into their possession." There was also a prayer for other and further relief. Copies of the Separation Agreement and Trust Agreement were attached as exhibits.

After a demurrer by the trustees to the bill of complaint was overruled, they filed an answer admitting many of the allegations in the bill, alleging lack of knowledge of others and claiming their right as trustees to the insurance proceeds. Stipulations were entered into by Rita and the trustees with Continental and Guardian, whereby those insurance companies would continue to hold the insurance proceeds and pay $4\frac{1}{2}\%$ interest on them until the final decision in the pending case and would pay them over in accordance with an order of court or the stipulation of Rita and the trustees.

Mutual, however, filed an answer in the suit and also a counterclaim against Rita and cross-claim against the trustees, seeking that Rita and the trustees be restrained from instituting or prosecuting any action against Mutual in any court arising out of the death claims under its two policies then amounting to $20,225.10 and further that Rita and the trustees be required to interplead to settle between themselves their rights to the insurance money and that Mutual be discharged from all liability, after depositing of the money with the Clerk of the Circuit Court of Baltimore City to be deposited by him in a federally insured bank to the credit of the case and the payment to Mutual of its costs and reasonable counsel fees.

Thereafter, a Stipulation was entered into between Rita, the trustees and Mutual and filed in the suit on February 19, 1969, in which it was agreed:

(1) Mutual would make "immediate payment" of $20,125.10 to the trustees.

(2) The $20,125.10 represents the full sum payable under the Mutual policies less $100 which Mutual should "retain as a contribution toward the payment of its counsel fee in this case."

(3) Mutual is dismissed and discharged as a defendant in the pending case; the counterclaim and crossclaim for interpleader was dismissed by Mutual; and, upon payment of the $20,125.10 Mutual was "discharged and released from all further liability under said policies of insurance."

(4) The Stipulation "is without prejudice to the respective claims" of Rita and the trustees "to the proceeds of the above policies; that said Trustees shall hold and disburse the above funds only in accordance with a separate Stipulation executed simultaneously herewith on their behalf and on behalf of the Plaintiff."

The separate Stipulation between Rita and the trustees filed in open court at the hearing on the merits on January 25, 1972, recited the simultaneous execution of a separate Stipulation with Mutual under which Mutual would pay $20,125.10 to the trustees without prejudice to the claims of the parties to the present Stipulation and that the trustees should hold and disburse the money only in accordance with a further Stipulation. The separate and further Stipulation provided:

1. The $20,125.10 paid by Mutual to the trustees should be deposited in a federally insured Savings and Loan Association "in their names as Trustees."

2. The trustees should pay immediately upon receipt of the money and its deposit $1,200 to Rita, representing $200 a month for the months of September, October, November and December of 1968 and for the months of January and February of 1969; Rita would pay the $1,200 to the Bohemian Building and Loan Association (Bohemian), the holder of the mortgage on the property, 1809 Vista Lane, to be applied on account of the mortgage on that property.

3. The trustees should pay $200 a month, commencing March 1, 1969, to Rita to be considered as the "board and lodging" of the two children of Rita and Mr. Phipps, deceased, and such payments should be continued each month during the pendency of the case and so long as Rita has the care and custody of the two children during such pendency.

4. Rita would pay the $200 monthly payments to Bohemian to be applied to the mortgage so long as it remains unpaid during the pendency of the case and if not paid and extinguished.

The Stipulation then provided:

"5. That upon the final determination of this pending court case, any sum of money which the aforesaid Trustees shall have received from the Mutual Life Insurance Company of New York, remaining on deposit or in the hands of said Trustees, shall be paid in accordance with an Order of Court or an agreement of all parties, as the case may be.

"6. That said Trustees shall not be entitled to any remuneration or commission or counsel fee from said funds which are the subject of this Stipulation, except as may be provided by any Order of Court or an agreement of all parties as the case may be."

At the trial of the case on the merits, it was stipulated between the parties that each of the life insurance policies involved in the present case contained provisions by which the insured reserved the right to change the beneficiary at any time subject to the approval of the respective insurance companies and further that the insured, Mr. Phipps, did request the companies for a change of beneficiary under each policy in favor of the trustees and that this change of beneficiary was accepted by each insurance company for each policy.

The chancellor filed his opinion on May 8, 1972. He concluded that the Separation Agreement was supported

by consideration and, particularly in view of Code (1966 Repl. Vol.) Art. 16, § 28, was valid and enforceable, nor had Rita breached the agreement. Had Mr. Phipps lived, the chancellor stated, the equity court might well have granted specific performance of the Separation Agreement and have required him to reinstate Rita as beneficiary in the policies. He then stated:

> "Since he is not alive, this Court must DE-CLARE the *Irrevocable Trust Agreement* a nullity and ORDER that all funds in the hands of the various insurance companies be paid over to the plaintiff."

It will be observed that no mention is made in the chancellor's opinion of the money held by the trustees pursuant to the Stipulations in regard to the Mutual Life insurance money then under the control of the trustees.

The chancellor then stated:

> "It should be added that this ruling will in no way adversely affect the children, since the Trust Agreement was a nullity and the children never had any beneficial interest of which to be deprived. It is quite obvious, however, that the mother has and is adequately providing for the care and custody of her children."

The decree of May 17, 1972, reciting the hearing in open court, that testimony had been taken, exhibits offered and that the lower court had filed its written opinion, provided:

> "1. That the purported Irrevocable Trust Agreement dated April 30, 1968, between Robert T. Phipps, Grantor, and Leonard P. Borotka and Ralston B. Thompson, Trustees, be, and the same is hereby, declared to be null and void, and of no legal effect;
> "2. That all of the designations of Leonard P. Borotka and Ralston B. Thompson, Trustees,

254

as beneficiaries on the policies insuring the life of the said Robert T. Phipps with the Defendant Insurance Companies, be, and the same are hereby, declared to be null and void, and of no legal effect."

The decree then provided that Rita was declared to be the primary beneficiary under the policies during the lifetime of the insured, Mr. Phipps, and, as such, she "was entitled to receive all proceeds" under the policies. Guardian and Continental were ordered to pay the proceeds due under their respective policies and any accrued interest to Rita. The decree then provided:

"6. That the Defendants, Leonard P. Borotka and Ralston B. Thompson, be, and they are hereby, Ordered and directed to pay over and deliver to the said Plaintiff, all proceeds which are still remaining in their possession and control, from the original sum of $20,125.10 which was paid by the Mutual Life Insurance Company of New York to the said Leonard P. Borotka and Ralston B. Thompson by Stipulation of the parties, said sum of money having been the net proceeds under Policy Nos. 766-26-75N and 824-97-35, on the life of the said Robert T. Phipps.

"7. That the Mutual Life Insurance Company of New York, the Guardian Life Insurance Company of America and the Continental Assurance Company, being three of the original Defendants in this matter, be, and they are hereby, dismissed and discharged as Defendants in this case, by reason of the express written stipulation of all of the parties, said Stipulations having been heretofore filed in this case."

Rita, the plaintiff, was required to pay the costs of the proceeding.

After the entry of the decree, the lower court, on May 30, 1972, upon the petition of the trustees, passed an order, as follows:

"ORDERED that the effect of the Court's Decree dated May 17, 1972, be and it is hereby stayed until such time as the Court of Appeals issues its mandate in this case, and it is further

"ORDERED that the Defendants, Leonard P. Borotka and Ralston B. Thompson, be and they are hereby authorized to withdraw a sum of money not exceeding Five Hundred ($500.00) Dollars from the Trust Estate to finance their appeal from the judgment rendered in the above-entitled case."

The trustees, on June 15, 1972, entered a timely appeal to this Court from the decree of May 17, 1972.

### (1) and (2)

Questions (1) and (2), *supra*, can readily be considered together. We are of the opinion that Rita was entitled to the proceeds under the Continental and Guardian policies and to the net balance ultimately remaining in the hands of the trustees paid to them by Mutual in accordance with the Stipulations, but that the chancellor erred in declaring that the Irrevocable Trust Agreement and that the designations of the trustees as beneficiaries were "null and void, and of no legal effect," rather than to be *ineffective* in the present case and to result in a payment of the proceeds of the policies to Rita. The decree will be modified in this regard and, as modified, affirmed. When executed by Mr. Phipps, the grantor, on April 30, 1968, the Trust Agreement was not facially void in that the grantor had possession of the policies which contained, on their face, the unfettered right in the insured to change the beneficiary. So far as the three insurance companies were concerned, the change of beneficiary was entirely valid and effective. The trustees, taking without notice of the equitable interest of Rita, would have been entitled to the insurance proceeds if they had given value for the change of beneficiary to them. *See Sun Life Assurance Co. of Canada v. Hoy,* 174 F. Supp.

859, 863 (E.D. Ill. 1959); *Columbian Circle v. Mudra,* 298 Ill. 599, 132 N. E. 213 (1921).

Indeed, if Rita had predeceased the insured Phipps, or had remarried prior to his death, the trust would have been effective as carrying out the second sentence in Paragraph 6 of the Separation Agreement inasmuch as the Trust Agreement required the grantor, Phipps, to maintain the insurance for the benefit of the two minors. The Irrevocable Trust Agreement is in substantial compliance with the second sentence of Paragraph 6 or is a provision for the two sons even more favorable to them than were the provisions of Paragraph 6 in that regard. The failure of the grantor to designate Rita as primary beneficiary under those circumstances, while a technical violation of the first sentence of Paragraph 6, would have been *damnum absque injuria* in view of the provisions of the second sentence of Paragraph 6. In short, the Trust Agreement, when executed, had the possibility of being fully effective if Rita predeceased the insured or remarried prior to his death, it being implicit in Paragraph 6 that if Rita predeceased the insured or remarried prior to his death, he was at least at liberty, if not required, to change the beneficiary for the benefit of the two sons. Paragraph 6, therefore, did not in all events and all circumstances prevent the insured from changing the beneficiary but, at least, permitted such a change of beneficiary under the circumstances mentioned. Rita is correct in urging that in view of her survival of the insured and her failure to remarry prior to his death, the contract provision in the first sentence of Paragraph 6, prima facie, gives her the right to the proceeds from the policies, and the authorities so hold. *See, e.g., Reliance Life Insurance Co. of Pittsburgh v. Jaffee,* 121 Cal. App. 2d 241, 263 P. 2d 82 (1953); *Shoudy v. Shoudy,* 55 Cal. App. 344, 352, 203 P. 433, 436 (1921). *See also Locomotive Engineers Mutual Life and Accident Insurance Association v. Locke,* 251 App. Div. 146, 295 N.Y.S. 689, *aff'd,* 277 N. Y. 584, 13 N.E.2d 781 (1938); *Boffa v. Bove,* 121 N.Y.S.2d 709 (Sup. Ct. 1953). This is the type of

provision in a separation agreement for which a court of equity will grant specific enforcement. *See Reichhart v. Brent,* 247 Md. 66, 71, 230 A. 2d 326, 328 (1967).

It may well be that but for the Stipulations in regard to the proceeds of the Mutual policies and the provisions of the Order of May 30, 1972, that there would be no trust *res* in the hands of the trustees and there would have been nothing on which they would have had duties to perform or from which to receive compensation or reasonable counsel fees. By the Stipulation between Rita and the trustees, however, Rita agreed that Mutual should pay the Mutual proceeds into the hands of the trustees who were to perform certain specific duties in regard to those proceeds. It was obviously contemplated that commissions and counsel fees for the trustees might be allowed and Paragraph 6 of the Stipulation between Rita and the trustees—already set out in full—provided that the trustees should not be entitled to commissions or counsel fees from the funds in their hands *"except as may be provided by any Order of Court or by an agreement of all parties, as the case may be."* (Emphasis supplied)

As we have already stated, the chancellor on May 30, 1972, upon the petition of the trustees, stayed the effect of the decree of May 17, 1972, until this Court "issues its mandate in this case" and authorized the trustees to withdraw a sum not exceeding $500 "to finance their appeal" from the decree of May 17.

The chancellor on June 13, 1972, upon the petition of the trustees, reciting their duties pursuant to the Stipulation between Rita and the trustees, ordered that Mr. Borotka be permitted to be the sole signatory on any of the accounts in the Maryland National Bank. The court authorized the bank to accept the signatures of both trustees or that of Mr. Borotka alone because Mr. Thompson had moved to Arizona.

Although the petitions of May 30 and June 13 were both served on counsel for Rita, the record does not disclose that any objection was made by her to the passage

of the requested orders. Indeed, there was no cross-appeal filed to the order of May 30, 1972, giving the trustees authority to withdraw not exceeding $500 to finance the costs of the present appeal.

We are mindful that the Stipulation filed in the case on February 19, 1969, between Rita, the trustees and Mutual provided that the Stipulation was "without prejudice to the respective claims" of Rita and the trustees "to the proceeds of the above [Mutual] policies"; but that Stipulation also provided that the trustees should hold and distribute the funds only in accordance with a separate Stipulation executed simultaneously on behalf of the trustees and Rita. This provision means that the payment of the proceeds by Mutual to the trustees should be without prejudice to the respective claims of Rita and the trustees but the holding and disbursement of the funds should only be in accordance with the Stipulation between Rita and the trustees and *this Stipulation governed such holding and disbursement* and represented the position of both Rita and the trustees in regard to such holding and disbursement of funds. The separate Stipulation between Rita and the trustees was filed in open court at the hearing on the merits on January 25, 1972, as we have previously observed.

In our opinion, the provisions of the Stipulation between Rita and the trustees on January 25, 1972, as well as the provisions of the subsequent orders of May 30 and June 13, 1972, were inconsistent with any theory that the Trust Agreement was null and void and of no effect and are only consistent with the theory that the Trust Agreement was valid and subsisting and that the trustees had duties and obligations given them by that Stipulation and those orders of court. Hence, the trustees are entitled to have the lower court determine and adjudicate the amount of any commissions and what allowance for reasonable counsel fees for counsel for the trustees should be awarded from the Mutual insurance proceeds held by the trustees, pursuant to the Stipulation filed January 25, 1972.

In our opinion, the decree of May 17, 1972, should be modified by striking out the words, "declared to be null and void, and of no legal effect" at the end of Paragraphs 1 and 2 of the decree and substituting in lieu thereof the words, "declared to be ineffective to entitle those trustees to the proceeds of the policies insuring the life of Robert T. Phipps with the Defendant Insurance Companies;" and further modified by changing the period at the end of Paragraph 6 to a comma and adding the following "less such sums as the Circuit Court of Baltimore City may hereafter determine by its order to be proper allowances from those proceeds to Leonard P. Borotka and Ralston B. Thompson, trustees, under the Irrevocable Trust Agreement dated April 30, 1968, for any trustees' commissions, and for any reasonable counsel fees for their counsel."

> *Decree of May 17, 1972, modified as set forth in this opinion and, as modified, affirmed, the costs to be paid from the proceeds in the hands of the appellants as trustees under the irrevocable trust agreement dated April 30, 1968, and case remanded for determination by the lower court of proper allowances from those proceeds to the appellant trustees for any trustees' commissions and for any allowance to the appellant trustees for any reasonable counsel fees for their counsel, and entry of a proper order in regard thereto.*