The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Plaintiff,

v.

Mary E. JONES, Appellee,

and

Melva Lee Jones Homens, Appellant.

No. 81–1607.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1981.

Decided May 27, 1982.

Rehearing Denied July 26, 1982.

A. Ronald Rubin, Baltimore, Md., for appellant.

Alexander Stark, Baltimore, Md., for appellee.

Before WINTER, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

In an action of interpleader to determine which of decedent's two wives was entitled to the proceeds of his life insurance policy, the district court granted summary judgment to the second wife. It was the district court's view that the claim of the first wife, if any, was solely against the estate of the decedent.

We reverse and remand for further proceedings.

I.

The facts in this case are undisputed. When Alfred McClemen Jones died October 7, 1980, there was outstanding on his life a group policy of life insurance in the amount of $16,500, procured by his employer and issued by The Equitable Life Assurance Society of the United States (Equitable), a New York corporation. The policy reserved to the insured the power to change the beneficiary.

The decedent had originally designated his first wife, Melva Lee Jones (now Homens), a citizen of Maryland, as the benefi-

ciary. The decedent and Melva were divorced on March 10, 1972, but as part of a separation agreement between them, executed on June 14, 1968, and made part of the subsequent decree of divorce, the decedent agreed, in consideration of the "nominal amount of alimony" claimed by Melva, to keep the policy in force and to retain Melva as the primary beneficiary.[1] This promise was unconditional, but neither Equitable nor the decedent's employer was ever given notice of the undertaking.

On June 7, 1975, the decedent married Mary E. Jones, a citizen of Maryland, and thereafter he designated Mary as the beneficiary of his life insurance policy. When the insured died, Melva and Mary each asserted that she was entitled to the full proceeds of the policy. Equitable deposited the proceeds of the policy into court and impleaded both claimants. Mary answered asserting that she had been properly designated the primary beneficiary; Melva's answer plead the legal effect of the decedent's contractual undertaking to retain the policy and not to change the beneficiary, all as incorporated in the divorce decree.

The district court held that the separation agreement had no effect on the decedent's power to change the beneficiary of his life insurance policy. Moreover, there was no question but that the decedent had taken all proper procedural steps to change the beneficiary of the policy from Melva to Mary. Accordingly, the district court gave judgment for Mary, holding that Equitable is liable to Mary and only to Mary for the full amount of the life insurance proceeds.

The district court specifically refrained from ruling on the continued validity of the separation agreement after Melva's remarriage, or the legal effect of the word "irrevocably." These issues, in the view of the district court, were irrelevant to the case at bar, and raised state-law questions within the special competence of state domestic relations courts which could be litigated in a claim by Melva against the estate of the decedent for breach of the separation agreement.

## II.

When Equitable instituted the interpleader action, it became the duty of the district court to determine which of the two claimants was entitled to the fund deposited into the court.[2] This, the district court undertook to decide, but we are of the opinion that it erred, as a matter of law, in deciding that Mary, rather than Melva, is entitled to the insurance proceeds.

By reason of the citizenship of the claimants and the situs of the transactions, Maryland law governs the respective rights of the claimants to the fund. 3A Moore's Federal Practice ¶ 22.14[5]. It is true, as the district court ruled, that under Maryland law the acts of the decedent would ordinarily effect a change of beneficiary of the policy. But the controlling authority in this case, *Borotka v. Boulay*, 268 Md. 244, 299 A.2d 803 (1973), creates an exception to this rule. That case, on facts indistinguishable from those presented here, considered the effect of a provision in a separation

1. Opposite this provision of the separation agreement there appeared in the margin in handwriting with the initials of the parties the word "irrevocable."

2. Jurisdiction to entertain the interpleader action exists by reason of the diversity of citizenship between Equitable and the claimants with the amount in controversy in excess of $10,000, exclusive of interest and costs. 28 U.S.C. § 1332. The appropriate resolution of the interpleader action is to absolve the stakeholder from the threat of multiple liability by determining which of the claimants is entitled to the stake. 7 Wright and Miller, Federal Practice and Procedure § 1702, p. 362 (1972). The classic description of the function of an interplead-

er is found in *Evans v. Wright*, C.P.1865, 13 W.R. 468 (per Willes, J.):

The principle of interpleader is that, where two persons are engaged in a dispute, and that which is to be the fruit of the dispute is in the hands of a third party, who is willing to give it up according to the result of the dispute, then, * * * that third person * * * is not to be obliged to be at the expense and risk of defending an action; but, on giving up the thing * * *, he is to be relieved, and the Court directs that the persons between whom the dispute really exists shall fight it out at their own expense. The mere statement of the principle shows its justice.

agreement, incorporated in a divorce decree, binding a husband to maintain his former wife as the beneficiary of a life insurance policy, on his subsequent designation of a new beneficiary in violation of his agreement.

In *Borotka*, as in this case, the decedent purported to change his life insurance beneficiary, designating certain trustees as the new beneficiaries, although a prior separation agreement, incorporated into a divorce decree, obligated the decedent to retain his previous wife as beneficiary. After the decedent's death but before payment had been made on the policies, the wife sued the new beneficiaries, the trustees, and the insurance companies.

The court held that the separation agreement was valid and enforceable, and created an equitable interest in the proceeds of the policy. 299 A.2d at 808–809. Nonetheless, if the second beneficiary had, without notice of the prior interest, given value for the change of beneficiary, the second beneficiary would have a superior equity and would be entitled to the life insurance proceeds. *See* 299 A.2d at 809. But since the trustees had not given value for their designation as beneficiaries, the attempted change of beneficiary was ineffective. *Id.* Finally, ruling that the interest created by the separation agreement was one "for which a court of equity will grant specific enforcement," the court ordered the insurance companies to pay the proceeds to the wife. *Id.* at 809–810.

Thus, without deciding the question, the Maryland court in *Borotka* indicated that the change of beneficiary in the instant case would be effective, despite the existence of the separation agreement, if, but only if, Mary, the second beneficiary, had given value for the change without notice of Melva's prior interest in the proceeds.[3] It follows that, under *Borotka*, Melva is entitled to the proceeds of the policy unless Mary can establish a superior equity by credible proof that she gave good consideration, without knowledge of Melva's designation and the provisions of the separation agreement and the decree of divorce, for her designation as beneficiary.

We do not think that this record is sufficiently complete to make a final disposition of this case without remand. Under Maryland law, marriage may be a consideration for a contract. *Braecklein v. McNamara*, 147 Md. 17, 127 A. 497 (1925). But Mary has not pleaded her marriage as consideration for the change of beneficiary. Indeed she suggests otherwise by her admission that she had no notice of a prior beneficiary or knowledge of when she was designated as a beneficiary, so that it could be inferred that the change of beneficiary was the decedent's unilateral act rather than as a result of any agreement with Mary. At the same time, Mary asserts in her brief to us that the change of beneficiary "was supported by valuable consideration consisting of" her marriage to decedent. While it is not unusual for advocacy to exceed what a record discloses, we do not think that we can say that the contrary inferences show Mary so clearly not to have a superior equity despite her contention that we should direct judgment for Melva without more. Thus we conclude that the judgment of the district court must be reversed and the case remanded for further exploration of the circumstances of the change of beneficiary, i.e., whether Mary, without notice of Melva's interest, gave value for her designation, and for entry of a judgment in accordance with the views expressed herein.

REVERSED AND REMANDED.

MURNAGHAN, Circuit Judge, dissenting:

My reluctant dissent is generated by my disagreement as to the existence of a con-

**3.** In *Borotka*, the change of beneficiary may also have been effective if the first beneficiary had failed to comply with the condition of the separation agreement that she not remarry. Since, in this case, the agreement was uncondi-tional, the fact that Melva remarried is irrelevant to her claim to the insurance proceeds and therefore to the effect of the change of beneficiary.

troversy between diverse parties which merits our intervention. The only matter open to question truly presented at any time in the litigation was that arising from the conflict of the claims of Melva (wife No. 1) and Mary (wife No. 2), both of whom were non-diverse Maryland citizens.

Judge Winter, outlining the rationale underlying an interpleader action, states:

> The appropriate resolution of the interpleader action is to absolve the stakeholder from the threat of multiple liability by determining which of the claimants is entitled to the stake.

At 358 n.2. He quotes an English authority, *Evans v. Wright*, C.P. 1865, 13 W.R. 468, for the proposition that the middleman or innocent bystander to a dispute should not "be obliged to be at the expense *and risk* of defending an action." (Emphasis supplied.)

The difficulty in the instant case stems from the fact that here the insurance company was at no risk and under no threat of multiple liability.[1] The insurance contract unambiguously directed payment of the proceeds following the death of the insured to Mary, the second wife. It is settled that an insurance company is obligated to pay the policy proceeds only to the named beneficiary. *See generally* 2 Appleman, Insurance Law and Practice § 771 at 150–51 (1976) ("Where the policy is made payable to a named beneficiary, the insurer cannot discharge its liability by payment to another person, and the beneficiary may maintain an action directly for the benefits thereof upon the death of the insured"). *Cf. Little v. First Federated Life Insurance Co.*, 267 Md. 1, 6, 296 A.2d 372, 375 (1972) (" 'Where [an insurance] contract is plain as to its meaning, there is no room for construction and it must be presumed that the parties meant what they expressed' and expressed what they meant"), quoting *Kermisch v. Savings Bank of Baltimore*, 266

Md. 557, 559–60, 295 A.2d 776, 778 (1972). Melva, entirely deprived of any possibility of recovery from the insurance company by the insured's change of beneficiary, simply had no viable basis for succeeding in any suit against the insurer.

It is well-settled that interpleader is not available when one of the two "conflicting claims" is of such ethereal gossamer as to be totally devoid of substance. *See New York Life Insurance Co. v. Lee*, 232 F.2d 811, 813 (9th Cir. 1956) ("There is no doubt but that an asserted adverse claim may be so wanting in substance that interpleader under the statute may not be justified"); *Stuyvesant Insurance Co. v. Dean Construction Co.*, 254 F.Supp. 102, 108 (S.D.N.Y. 1966), *aff'd sub nom. Stuyvesant Insurance Co. v. Kelley*, 382 F.2d 991 (2d Cir. 1967) ("a mere naked claim without any color of support does not justify interpleader. . . ."). *See also* 3A Moore's Federal Practice ¶ 22.-02[1] at 22–7 (2d ed. 1981). In *John Hancock Mutual Life Insurance Co. v. Beardslee*, 216 F.2d 457 (7th Cir. 1954), *cert. denied*, 348 U.S. 964, 75 S.Ct. 523, 99 L.Ed.2d 751 (1955), the insured's daughter claimed that she was entitled to the proceeds of her father's policy, although his wife was the named beneficiary, since the insured had separated from his wife, and had been wrongly advised by the insurance company that he could not change the beneficiary. The court held that the daughter's claim was insufficient for interpleader purposes, although she might have a tort claim against the insurance company. Similarly, Melva's claim here was not sufficient to establish the threat of multiple liability required for interpleader jurisdiction.

To permit use of interpleader in such a set of circumstances is to invite the expansion of the area in which federal courts undertake to decide matters solely and exclusively of state law.[2] For example, sup-

---

1. F.R.Civ.P. 22 permits Interpleader where "the plaintiff is or may be exposed to double or multiple liability."

2. It is such unnecessary and ill-advised extensions which invite onslaughts designed to eliminate diversity jurisdiction altogether. Here we have no proper occasion to express at length the regrettable consequences for the efficient functioning both of the state judiciary and of

pose Smith and Jones, both Maryland citizens, have a dispute involving a sum in excess of $10,000, which has entirely local Baltimore contacts. Nevertheless, Smith would like the issues resolved by the United States District Court for the District of Maryland rather than by the appropriate state court. He learns that a national company, incorporated in Texas and with its principal place of business in that state but doing business in Maryland, owes Jones $15,000. On the majority's approach, Smith could sue, or even merely threaten to sue, the company, claiming that the $15,000 should be paid to him instead of to Jones, because Jones owes him $15,000. A resulting interpleader of Smith and Jones by the company would, under the majority's theory, confer jurisdiction on the federal district court and permit it to decide not only that Smith had no claim against the corporation, but also the merits of the purely local controversy between Smith and Jones.[3]

The patent flimsiness of Smith's claim should prevent manufacture out of the whole cloth of a jurisdictional basis to hear a state law controversy involving two citizens of the same state. It serves no purpose for us to reach out to create an expanded jurisdiction where to do so tends to upset the delicate balance of the scales by which we decide which court, state or federal, should hear a controversy.[4]

The Maryland case of *Borotka v. Boulay*, 268 Md. 244, 299 A.2d 803 (1973) provides an intricate knot, which needs untying to comprehend the proper application of the law in circumstances such as the ones we here confront. While consideration of the case only on the basis of isolated excerpts might lead to either the majority's conclusion or that of this dissent, a reading as a whole demonstrates that it is entirely harmonious with the conclusion I have expressed.

The first thing to remember is that *Borotka* was a case in the Maryland courts. It consequently presented the Maryland Court of Appeals with no occasion to consider the requisites of and limitations on jurisdiction, diversity being a consideration exclusively applicable to federal proceedings. Consequently, whether several cases could or could not be coalesced was a question before the Maryland court which was not complicated by a need to eschew intrusion on purely state matters by a federal court.

*Borotka* began in a manner quite similar to the origins of the instant case. A husband and wife entered a separation agreement on October 1, 1967 which was incorporated in their divorce decree of November 15, 1967. By that agreement the husband undertook to maintain three insurance policies in full force and effect, and not to vary a beneficiary designation in favor of the wife so long as she had not died or remarried. The designation further called for payment to the two sons of the marriage in the event of the wife's death or remarriage.

The husband suffered an untimely death in an airplane crash on August 23, 1968. In the interval between divorce and death, the

---

the federal judiciary in our delicately balanced system of dual sovereignty, should diversity jurisdiction be eliminated. It is enough to observe that we should not unnecessarily provide stones to cast or other forms of ammunition.

**3.** Although the jurisdictional amount for statutory interpleader is only $500, the jurisdictional ruse can only be employed where the claim exceeds $10,000, and rule interpleader is available under F.R.Civ.P. 22, since statutory interpleader requires that there be diversity between two adverse claimants. 28 U.S.C. § 1335(a).

**4.** Of course, such questionable approaches to expansion of jurisdiction have occurred before. The Court of the Exchequer in the Sixteenth Century. impatient with the restriction of its jurisdiction and hence its power, began to permit suits on a similar theory related to specious claims against taxpayers or other Crown debtors. It was all a fiction, but the jurisdiction remained expanded. *See* 1 W. Holdsworth, *A History of English Law* 239–40 (7th ed. 1956) ("Among these advantages was the right of the crown to require payment from the debtor of its debtor and from the debtor of that debtor to an indefinite extent.... Hale C. B. showed how this principle ought to have been limited.... There would be no inconvenience if the king's debt were so levied, but ... to make the king's prerogative instrumental ... to satisfy other men's debts ... would be unreasonable, inconvenient, and mischievous to the subject ....").

husband created a trust, making new designations of beneficiary under the insurance policies in favor of the trustees. The trust terms operated to eliminate or diminish the wife's rights in the policies, and correspondingly to enhance the interests of the sons.

The court's analysis in *Borotka* was divided into two parts. In the first part, the court found that, following the husband's death, the insurance companies had the unfettered right, without risk of liability to the wife or any other claimant, to pay in accordance with the terms of their policies the entire proceeds to the trustees, as they were the designated beneficiaries. "So far as the three insurance companies were concerned, the change of beneficiary was entirely valid and effective." *Id.*, 268 Md. at 255, 299 A.2d at 809.[5]

However, the insurance companies did not elect to pay the policy proceeds to the trustees as the persons designated, although they would have been fully protected in doing so. Instead two of them stipulated with the wife that the proceeds would be retained by them until final disposition of the state court proceeding instituted by the

wife against the trustees, with the insurance companies also named as parties. The third company, under a stipulation with the wife and the trustees, paid the insurance proceeds to the trustees, who agreed that ultimate beneficial ownership, as between the wife and the trustees, would abide the outcome of the pending law suit (or any compromise settlement to which the wife and trustees might agree).

The second part of the court's analysis resolves the issues properly to be considered in the separate state court proceeding which, in my view of matters, would have to be brought by wife No. 1, Melva, against wife No. 2, Mary, or against the deceased husband's estate. Having stated clearly that the insurance companies could have paid the named beneficiaries without risk, the court's ensuing discussion of the controversy between the two ultimate claimants, the wife and the trustees was entirely unconcerned with the question of insurance company exposure.

In the equivalent to what would in the present case be a separate state court proceeding, the state court opined that the

5. The Maryland court thereby unambiguously acknowledged that the insurance companies would have run no risk in paying the trustees; that there was no threat of multiple liability were they to do so.

*Compare John Hancock Mutual Life Ins. Co. v. Beardslee*, 216 F.2d 457, 460, 461 (7th Cir. 1954), *cert. denied*, 348 U.S. 964, 75 S.Ct. 523, 99 L.Ed.2d 751 (1955), involving Illinois law, where a widow, the designated beneficiary, and the decedent's daughter both were making noises to the insurance company, about the insurance proceeds. The insurance company's interpleader was held to be unfounded.

[T]o justify an insurance company in bringing such an action the claims must be of more substance than the alleged claim of the defendant Geraldine Farrell [the daughter] on which the plaintiff [insurance company] here relied.

. . . .

Since Mrs. Farrell was not a claimant within the meaning of the Interpleader Act, the District Court properly found that the delay by the company in paying the proceeds of the policy to Mrs. Beardslee [the widow and designated beneficiary] was vexatious and unreasonable, and that she was, therefore, entitled to recover reasonable attorney's fees as part of the costs of the action, and was also entitled to recover interest at five per cent

per annum on the principal amount of $847.00 from March 12, 1952, the date the proofs of loss and the policy were delivered to the company.

Illinois thus has a rule of substantive law like the rule in Maryland. Of course, in other states the law might allow the claimant other than the designated beneficiary to recover from the insurance company, in which case interpleader would be appropriate. Competing claims in other states than Maryland could give rise to multiple risks of liability. *See John Hancock Mutual Life Ins. Co. v. Kraft*, 200 F.2d 952, 953 (2d Cir. 1953) ("The argument is unsound that the complaint is insufficient to show jurisdiction even for an equitable interpleader because the widow's claim is not against the insurance company but against the insured's estate. She claims that in consideration of money received by her husband from her he promised to make her the beneficiary of his life insurance policies. If she succeeds in establishing this, the policies may be subjected to a trust in her favor and the insurance company, with knowledge of her claim, could not safely pay the executors. 3 Scott on Trusts, § 321.1. The stakeholder should not be obliged at its peril to determine which of two claimants has the better claim.")

wife was entitled to the insurance proceeds. The rationale makes it altogether probable that Melva, on proceeding, as I believe she should, in an action in the Maryland courts, would be deemed the ultimate beneficial owner, and so prevail over Mary. My difficulty lies in the not inconsequential point that a Maryland state court, and not the United States district court or court of appeals, should render the decision. The point is substantial, for it concerns the preservation of harmony between sovereigns.

It is not unusual for legal title and equitable title to repose in different persons. The federal forum was available to confirm Mary's legal title, for she and the insurance company were diverse. However, the dispute over equitable, beneficial title was exclusively between Mary and Melva, who were not diverse, and who should do their fighting in the state court. Accordingly, I would affirm the district court, which properly awarded the policy proceeds to Mary, without prejudice to any state claim of Melva against the decedent's estate or against Mary on a theory of constructive trust.