COMMERCE FUNDING CORP.,
Plaintiff/Counter–
Defendant,

v.

SOUTHERN FINANCIAL BANK, et
al. Defendant/Counter–Plaintiff.

No. Civ.A. 99–201–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 21, 1999.

Janet L. Eveland, Law Offices of Janet L. Eveland, Columbia, MD, for Commerce Funding Corporation.

L. Darren Goldberg, Draper & Goldberg, PLLC, Leesburg, VA, for Southern Financial Bank.

Julie A. Quagliano, Quagliano & Seeger, Washington, DC, for Bank of Asheville.

Mark White Byrum, Jr., The Bryum Law Office, PC, Alexandria, Va, for Worldwide Security Services Corporation.

### MEMORANDUM OPINION

HILTON, Chief Judge.

This matter comes before the Court on Plaintiff/Counter–Defendant, Commerce Funding Corporation's ("CFC") Motion for Summary Judgment as to Counts III and IV of the Counter–Claims of Defendant/Counter–Plaintiff, Worldwide Security Services, Inc. ("Worldwide").

This action was commenced when Plaintiff/Counter–Defendant, CFC, filed a claim for interpleader and deposited into the registry of this Court funds claimed by Defendant/Counter–Plaintiff, Worldwide, and Defendants, Southern Financial Bank ("Southern") and Bank of Asheville ("BOA"). In response to CFC's claim, Worldwide filed a counterclaim for breach of contract, alleging that CFC had failed to pay it the disputed funds, and a counterclaim for negligence arising from that same conduct. All parties involved agree that CFC has no interest in the funds. Because there are no material facts which suggest that CFC has breached its contract or that it has engaged in any actionable negligence, CFC's motion for summary judgment on Worldwide's counterclaims should be granted.

## Background Facts

This suit involves conflicting lien claims to accounts generated in the performance of certain contracts and from the actions of the parties after these conflicting claims came to light. On December 16, 1996 and February 21, 1997, Southern loaned money to Denmark Security, Inc. ("Denmark") and in exchange obtained loan documents including security agreements and financing statements. In April, 1998, Denmark began a financing relationship with CFC by written application executed by the chairman of the board of directors of Denmark, Vincent Venegoni. Mr. Venegoni executed an Assignment and Transfer of Receivables Agreement ("CFC/Denmark Contract") on April 21, 1998 in which CFC and Denmark agreed that all accounts receivable with respect to certain contracts, including contracts with the FBI known as the El Paso and Quantico contracts, were to be paid to CFC. The CFC/Denmark contract defined payments received by CFC from account obligors in excess of amounts owed to CFC by Denmark as "holdbacks" which were to be paid out to Denmark. As part of the application process for Denmark, CFC performed a lien search on April 21, 1998 and discovered that Southern had a superior perfected security interest. Mr. Venegoni acknowledged the validity of Southern's security interest in and to Denmark's assets, including the El Paso and Quantico contracts, in a subordination agreement executed on May 6, 1998 by Denmark, Southern and CFC ("Southern Subordination Agreement"). During the period May 7, 1998 to June 1, 1998, CFC made advances to Denmark pursuant to the CFC/Denmark Contract and the Southern Subordination Agreement.

On June 19, 1998, Mr. Venegoni, now as president of Worldwide, stated in a written fax to CFC that Worldwide had purchased Denmark's assets and that Worldwide wished to enter into a factoring relationship with CFC for its contracts, including the El Paso and Quantico contracts. On June 24, 1998, Worldwide submitted its application for funding to CFC signed by Mr. Venegoni as president of Worldwide. The application disclosed that the Bank of Asheville ("BOA") was a creditor of Worldwide. Mr. Venegoni then executed an Assignment and Transfer of Receivables Agreement, fee agreement and Advances Amendment for a term of one year (collectively, the "CFC/Worldwide Contract") which was virtually identical to the CFC/Denmark Contract. On June 26, 1998, CFC made an advance in the amount of $40,000.00 to Worldwide.

On July 21, 1998, CFC received a letter from Southern referencing the Southern Subordination Agreement and making demand on CFC to pay all Worldwide holdbacks to Southern. On July 22, 1998, CFC was paid in full for its advance to Worldwide. Beginning on July 23, 1998, CFC began receiving payments from account obligors in excess of amounts owed to CFC by Worldwide such that these payments would constitute holdbacks pursuant to the CFC/Worldwide Contract. On July 24, 1998, CFC received a letter from counsel for Southern stating that Southern did not have notice of, nor did it consent to, the sale of Denmark's assets to Worldwide, claiming a security interest in the Worldwide holdbacks, and demanding that CFC pay the Worldwide holdbacks to Southern. On July 27, 1998, CFC informed Mr. Venegoni as president of Worldwide that CFC had received a demand from Southern to pay the Worldwide holdbacks to Southern. On July 28, 1998, CFC faxed a copy of the letter from Southern's counsel to counsel for Worldwide. On August 6, 1998, CFC received a letter from counsel for Worldwide demanding payment of the holdbacks to Worldwide.

On August 7, 1998, CFC received a letter of authorization from counsel for Southern with signed authorization by Mr. Venegoni as president of Worldwide to release $2,937.21 to Southern to bring Denmark's notes with Southern current and to release to Worldwide all holdbacks remaining after this payment to Southern

and acknowledgment that CFC, Southern, Denmark, Worldwide, and Mr. Venegoni "continue bound by all of the terms of the referenced Intercreditor Agreement [Southern Subordination Agreement]." Pursuant to this letter of authorization from Southern and Worldwide, CFC disbursed all holdbacks then in its possession by wire transfer in the amount of $2,937.21 to Southern on August 13, 1998. CFC continued to receive payments from account obligors pursuant to its assignments from Worldwide which payments constituted holdbacks.

On August 24, 1998, CFC received from Southern a letter claiming a total amount due to Southern constituting a lien on the holdbacks of $73,298.30 plus the August, 1998 loan payment of $1,420.26 and releasing its claim for holdbacks in excess of these amounts. On August 24, 1998, CFC was holding $15,800.95 in excess of the amounts claimed by Southern. On August 25, 1998 CFC wire transferred $15,743.75 to Worldwide (consisting of the $15,800.95 less costs and wire transfer fees).

From August 25, 1998 to February, 1999 CFC received conflicting demands from Southern and Worldwide for payment of $73,450.97. On February 19, 1999, CFC filed a Complaint for Interpleader under 28 U.S.C. § 1335 naming Southern, BOA, and Worldwide as defendants. On February 23, 1999, this Court entered an order allowing Plaintiff/Stakeholder, CFC, to deposit $73,450.97 ("interpleaded funds") into the registry of the Court. Worldwide answered the complaint and asserted counterclaims of breach of contract and negligence against CFC and other cross-claims, not here at issue, against Southern. This matter comes before the Court on CFC's motion for summary judgment on the counterclaims plead by Worldwide against CFC in counts III and IV.

### Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact. See FED.R.CIV.P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party. See id. Unsupported speculation is not enough to withstand a motion for summary judgment. See Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411–12 (4th Cir.1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the evidence presented must always be construed in the light most favorable to the nonmoving party. See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir.1996) (en banc).

### Worldwide's Breach of Contract Counterclaim

Under 28 U.S.C. § 1335, a party in possession of funds, whose ownership is disputed by two or more diverse claimants, may file an action for interpleader where the funds are greater than $500 and where the party in possession claims no interest in the funds. Developed over six hundred years ago by the common law courts of England, interpleader is a procedure used to avoid excessive litigation in instances of multiple claimants to a single stake. 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1701 at 483 (1986). For the uncertain stakeholder, interpleader is the law's answer to the mythical dilemma of Scylla and Charybdis. With-

out the option of interpleading funds, and faced with genuinely competing claims to a stake, the stakeholder is left with the unappealing prospect of either choosing one claimant over the other and facing action by the disappointed suitor or holding the stake and awaiting suit by both. The repository of the Court provides the stakeholder with the only safe harbor when caught between such a rock and a hard place.

In the instant case, CFC has interplead funds consisting of money designated as holdbacks from contracts between Worldwide and various other third parties.[1] It is clear that at some point Worldwide purchased the assets of Denmark and that there is a dispute between Southern and Worldwide as to money owed Southern based on certain transactions between Southern and Denmark. It is also clear that as part of that dispute, both Southern and Worldwide claim ownership of the funds to which CFC has interplead and in which all parties agree, CFC has no interest.

■ Worldwide, in its countersuit, alleges that CFC has breached its contract by not turning over all funds, designated as holdbacks, in excess of that amount owed to CFC. In an action for interpleader, however, such a counterclaim for breach of contract merely begs the question. The entire purpose of the interpleader action is to shield the uninterested stakeholder from the costs of unnecessary, multiple litigation. *See Equitable Life Assurance Society v. Jones,* 679 F.2d 356, 358 (4th Cir.1982) (stakeholder is "not to be obliged to be at the expense and risk of defending an action; but on giving up the thing . . . , he is to be relieved, and the Court directs that the persons between whom the dispute really exists shall fight it out at their own expense") (quoting *Evans v. Wright,* C.P. 1865, 13 W.R. 468); *see also* 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1701 at 483 (1986) (noting that interpleader was originally devel-

oped to protect against "double vexation upon a single liability."). Although a factual dispute may exist as to the rightful ownership of the fund, that dispute does not preclude the granting of summary judgment in favor of the interpleader. It is in the very nature of an interpleader action that two or more parties claim rights to certain money or property. What is undisputed is that the stakeholder, CFC, has no interest in the stake, and that a real controversy exists as to who does. Were the defendants in an interpleader action permitted to carry forward with counterclaims against the stakeholder based on the same interpleaded funds, the very purpose of the interpleader action would be utterly defeated.

■ There is, of course, a line across which an interpleader may not step with respect to determining when a genuine dispute exists as to the rightful owner of the stake. The interpleader action will not lie where "one of the 'competing claims' is of such ethereal gossamer as to be totally devoid of substance." *Equitable Life Assurance Society v. Jones,* 679 F.2d at 360 (Murnaghan, J., dissenting) (arguing that one of the claimants had a clear right to the stake and that the interpleader was in no danger of multiple litigation); *see also Equitable Life Assurance Society v. Porter–Englehart* 867 F.2d 79, 89 (1st Cir.1989) ("Where adversative claims to a fund do not exist, a party has no right to deposit into court monies which it knows belong to another, and casually stroll away."). Certainly there must be legitimate competing claims before a stakeholder will be afforded the protection of an interpleader action. Thus far, however, courts have not been entirely clear in establishing a test for determining the legitimacy of a claim. The court in *Equitable Life Assurance Society v. Porter–Englehart* held that a counterclaim could prevail where one of the claimant's entitlement to the fund was "plain as a pikestaff." 867 F.2d at 89.

---

1. The specific contracts at issue here are the El Passo and Quantico contracts made between the FBI and Denmark, and later sold to Worldwide.

One Virginia court has suggested that the requirement for the stakeholder ought to be a "reasonably articulable fear of inconsistent claims." *Prudential Insurance Co. v. Clark,* 1999 WL 370256 (Va. Cir. Ct.1999).

Whatever the standard may be, it is clear beyond debate that CFC satisfied it when confronted with the competing demands of Worldwide and Southern. Worldwide does not dispute that Southern has made demands upon CFC for the disputed funds[2]. Further, Worldwide does not attempt to argue that Southern's claim is so frivolous as to be unfit for adjudication in the interpleader action. Instead, Worldwide simply argues that it and not Southern is due the fund. This is precisely the issue to be decided in the claim for interpleader.

In order to effectuate the purpose of § 1335 in sparing the stakeholder the expense and vexation of multiple liability, it should be ordered that Plaintiff/Counter–Defendant, CFC's, Motion for Summary Judgment on Count III of Defendant/Counter–Plaintiff, Worldwide's Counterclaim be granted.

### Worldwide's Negligence Claim

■ In addition to the breach of contract claim, Worldwide asserts a claim of negligence against CFC for its failure to pay Worldwide the same interpleaded fund. Neither party disputes that the contract at issue is governed by Virginia law. Under Virginia law, the claimant must allege an "independent, wilful tort" beyond the mere breach of contract. *A & E Supply Co., Inc. v. Nationwide Mut. Fire Ins. Co.,* 798 F.2d 669, 672 (4th Cir.1986) (quoting *Kamlar Corp. v. Haley,* 224 Va. 699, 299 S.E.2d 514, 517 (1983)). "A tort action cannot be based solely on a negligent breach of contract." *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.,* 256 Va. 553, 559, 507 S.E.2d 344, 347 (Va.1998); *see also Charles E. Brauer Co., Inc. v. NationsBank of Virginia,* 251 Va.

28, 466 S.E.2d 382, 385 (1996) (breach of contractual duty of good faith pursuant to the UCC does not amount to independent tort); *Foreign Mission Bd. of Southern Baptist Convention v. Wade,* 242 Va. 234, 241, 409 S.E.2d 144 (Va.1991) ("the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.").

Worldwide only alleges a negligent breach of CFC's contractual duty pursuant to the CFC/Worldwide contract. Nowhere does Worldwide attempt to establish an independent tort. Because a breach of contract alone cannot form the basis for negligence pursuant to Virginia law, CFC's motion for summary judgment on Worldwide's counterclaim for negligence should be treated as a motion to dismiss and should be granted.

### Conclusion

For the above stated reasons, CFC's Motion for Summary Judgment as to Counts III and IV of the Counterclaims of Defendant/Counter–Plaintiff, Worldwide for breach of contract and negligence should be granted.

An appropriate Order shall issue.

### ORDER

This matter comes before the Court on Plaintiff/Counter–Defendant, Commerce Funding Corporation's Motion for Summary Judgment as to Counts III and IV of the Counterclaims of Defendant/Counter–Plaintiff, Worldwide Security Services, Inc. For the reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that Plaintiff/Counter–Defendant's Motion is GRANTED, and that Counts III and IV of the Counterclaim are DISMISSED.

---

**2.** In fact, Worldwide has filed cross-claims against Southern for Tortious Interference With Contractual Relations and Tortious Interference With Prospective Advantage based on Southern's claims for the fund.