## ALFRED H. BRAECKLEIN et al. *v.* JAMES J. McNAMARA et al.

*Antenuptial Settlement—Fraud as to Creditors—Tenancy by Entireties.*

Where, by a prenuptial contract, the prospective husband agreed, in consideration of the marriage, to convey property to the prospective wife, and a conveyance thereof was executed by him to a third person, who executed a conveyance to the husband and wife as tenants by the entireties, the latter to be recorded upon the marriage, which took place as agreed, the transaction was valid as against the husband's creditors, the wife having acted in good faith and without knowledge by her of any intention on his part to defraud his creditors. pp. 20-22

That the transfer was to the husband and wife as tenants by the entireties, rather than to the wife alone, did not disprove the prenuptial contract, or disentitle the wife to the benefit of the estate actually conveyed. p. 20

The fact that one of the deeds transferring the title bore a date subsequent to the day of the marriage was immaterial, both of the deeds being completely executed before the marriage, and their purpose as an inducement to that event having been accomplished. p. 20

Where a marriage settlement is evidenced by antenuptial deeds duly signed and acknowledged, the statute of frauds will not render it ineffective as against creditors, because the preliminary agreement was oral. p. 21

Marriage is a sufficient consideration to support a prenuptial conveyance, even though it operates to the prejudice of creditors, unless the grantee was implicated in a fraud to be committed against their interests. p. 21

An ante-nuptial settlement in favor of the prospective wife, though made with a fraudulent design by the settlor, should not be annulled without the clearest proof of the former's partici-

pation in the intended fraud, since upon its annulment there can follow no dissolution of the marriage, which was the consideration of the settlement.        p. 22

*Decided January 15th, 1925.*

Appeal from the Circuit Court No. 2 of Baltimore City (Dawkins, J.).

Bill by James J. McNamara and Beulah P. Smallwood against Alfred H. Braecklein and Marguerite A. Braecklein, his wife. From a decree for plaintiffs, defendants appeal. Reversed.

The cause was argued before Pattison, Urner, Adkins, Offutt, Bond, and Parke, JJ.

*George Arnold Frick,* for the appellants.

*Henry M. Siegel,* with whom was *James J. McNamara* on the brief, for the appellees.

Urner, J., delivered the opinion of the Court.

The appellees are judgment creditors of Dr. Alfred H. Braecklein, one of the appellants, and have obtained a decree avoiding as to their claims certain deeds by which the title to a house and lot in Baltimore, previously owned by the debtor, was vested in himself and his wife, the other appellant, as tenants by the entireties. The suit was defended on the ground that the transfer of the title was made in pursuance and consideration of an antenuptial agreement. It is to be determined on this appeal whether the defense should be sustained on the evidence in the record.

The marriage of the appellants occurred on June 7th, 1922. By a deed dated May 27, 1922, Dr. Braecklein conveyed his home property to William D. O'Keefe and wife, who immediately conveyed it to both of the appellants, as tenants by the entireties, by a deed which was postdated

June 12th, 1922, with a view to having it take effect after they were married. The first deed was recorded on June 3rd and the second on June 15th, 1922. Each of the deeds recited that it was executed in consideration of five dollars and "other good and valuable considerations." The judgments of the appellees were procured in suits brought after the execution of the deeds.

It was testified by Isaac T. Parks, Esquire, of the Baltimore Bar, by whom the deeds were prepared, that he was visited previously by Dr. Braecklein, who said he was about to be married and had "a piece of property" which he had agreed with his prospective wife to have conveyed to them as tenants by the entireties before the wedding. In answer to a question as to what was the real consideration for the deeds, Mr. Parks said: "The doctor told me he had agreed as a part of the marriage contract with his wife to convey this property."

Dr. Braecklein testified to the effect that about the first of March, 1922, when he became engaged to his present wife, he entered into a verbal agreement with her that in consideration of their marriage she should have the property which is now in litigation. For that consideration alone, he said, the deeds were executed. He owned at that time other real estate which he sold in November, 1922, for approximately one thousand dollars. According to his testimony he did not believe, at the time of the conveyances in question, that he was indebted to either of the appellees, but regarded each of them as his debtor for professional services which he had rendered.

Mrs. Braecklein, in her testimony, said it was agreed between Dr. Braecklein and herself, about the first of March, 1922, that she was to have his dwelling house in consideration of their marriage, and she further stated that she had no knowledge of his being indebted at the time of the agreement of conveyance, but was informed by him to the contrary.

Anton Braecklein, a brother of the doctor, testified that he was present at an interview between the appellants, prior

to their marriage, in which the agreement for the wife to have the home property of the husband was effected. The fact of such an agreement is proved also by the testimony of Mrs. Breitenocher, an aunt of Mrs. Braecklein. It was agreed at the trial that if Mrs. O'Keefe were present, she would testify that she and her husband accepted from Dr. Braecklein a deed for the property involved in this suit, and conveyed it to the appellants as tenants by the entireties "in pursuance of a marriage contract." Mr. O'Keefe was called as a witness and stated: "The only thing I know about the property is the fact that Mrs. Braecklein called my wife, they were sisters, and asked me if we wouldn't go to Mr. Parks' office located in the Law Building and sign the deed of a piece of property located on Charles Street and in return deed the property back to Mr. and Mrs. Braecklein after they became man and wife. We signed both papers at the same time."

No evidence was offered by the plaintiff in opposition to the testimony of the defendants and their witnesses in regard to the existence of the alleged pre-nuptial agreement. In our opinion the affirmative proof in the case justifies the conclusion that such an agreement was made and that the prospective marriage of the parties was included in the "good and valuable considerations" which the disputed deeds recite. The transfer of the title to the husband and wife as tenants by the entireties, rather than to the wife alone, does not disprove the described pre-nuptial contract, or disentitle her to the benefit of the estate actually conveyed. It was in declared fulfillment of a prior agreement to convey that instructions for the preparation of the deeds were given, and the wife had knowledge of their execution before the marriage was solemnized. The fact that one of the deeds transferring the title bears a date subsequent to the day of the marriage could not impair the ante-nuptial quality and effect of the settlement. Both of the deeds were completely executed before the marriage, and their purpose as an inducment to that event was accomplished. The title had

passed from the husband by a recorded deed to third parties, and their executed and acknowledged deed to him and his affianced wife as tenants by the entireties had been delivered to the draftsman with the understanding that it was to be recorded upon the marriage of the grantees. The marriage settlement being evidenced by ante-nuptial deeds duly signed and acknowledged, the statute of frauds should not be held to render it ineffective, as against this suit, on the ground that the preliminary agreement was oral. *Crane v. Gough,* 4 Md. 316; *Albert v. Winn,* 5 Md. 66.

In *Wood & Houston Bank v. Reed,* 131 Mo. 553, it was held that a deed made before marriage and in consideration thereof is valid against the husband's creditors, if the wife acted in good faith, although not delivered until the marriage had been consummated. The court said that the case was "relieved from the operation of the statute of frauds by the fact that the contract was entirely executed on the part of the wife; the whole of the consideration paid, by the marriage, and the deed itself signed by the husband in the most solemn form, sufficiently evidencing the contract to convey in writing."

There is no question as to the sufficiency of marriage as a consideration to support a pre-nuptial conveyance, even though it operates to the prejudice of creditors, unless the grantee was implicated in a fraud to be committed against their interest. 12 *R. C. L.* 518; 27 *C. J.* 540; Acts 1920, chapter 395, Code, art. 39B.

In *Prewit v. Wilson,* 103 U. S. 22, where a conveyance in consideration of a subsequent marriage was sustained as against a suit on behalf of creditors, the Supreme Court said: "When a deed is executed for a valuable and adequate consideration, without knowledge by the grantee of any fraudulent intent of the grantor, it will be upheld, however fraudulent his purpose. To vitiate the transfer in such cases the grantee also must be chargeable with knowledge of the intention of the grantor." In referring to the absence from that case of any evidence of knowledge by the wife, when the

conveyance was made, of any design by the husband to defraud his creditors, the Court said: "It is not at all likely, judging from the ordinary motives governing men, that, whilst pressing his suit with her and offering to settle property upon her to obtain her consent to the marriage, he informed her that he was insolvent and would, by the deed he proposed to execute, defraud his creditors. If he intended to commit the fraud imputed to him, it is unreasonable to suppose that he would, by unfolding his scheme, expose his true character to one whose good opinion at that time he was anxious to secure. \* \* \* There is an entire absence of elements which would vitiate even an ordinary transaction of sale where, if set aside, the parties may be placed in their former positions. And an ante-nuptial settlement, though made with a fraudulent design by the settlor, should not be annulled without the *clearest proof of the wife's participation in the intended fraud,* for upon its annulment there can follow no dissolution of the marriage, which was the consideration of the settlement."

In the present case there is no evidence tending to prove that the wife was aware of a design, if it existed, on the part of the husband to defraud his creditors by the conveyances here contested. Having entered into the marital relation in reliance upon the deeds, previously executed in consideration of the marriage, and having been apparently free of any purpose to participate in a fraud upon the grantor's creditors, we think she is entitled to be treated as an innocent purchaser for value, and to be protected in the property rights which the conveyances were intended to confer.

*Decree reversed, with costs, and bill dismissed.*