ADAMS, ET UX. *v.* AVIRETT, Trustee FOR
Albee Maryland Homes, Inc.

[No. 129, September Term, 1968.]

*Decided March 6, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, McWILLIAMS, FINAN and SINGLEY, JJ.

*George R. Hughes, Jr.,* for appellants.

*James Alfred Avirett* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The appeal is from an order that the trustee under a deed of trust had the right to proceed with the foreclosure of the deed. That right had been challenged by John Adams and Evelyn, his wife, the makers of the deed, by a bill of complaint to set it aside filed after foreclosure proceedings had been instituted, which alleged that in June 1966 they had agreed in writing with Albee Maryland Homes, Inc. for the purchase of building materials for a model home, that the materials Albee delivered did not meet the specifications and therefore they terminated the agreement on December 1, 1966, and demanded repayment of $101.00 they had paid on account, and further alleged that the deed of trust is "fraudulent, defective and invalid" because its affidavit and affidavit of consideration are "fraudulent, defective and invalid," in that they fail to comply with Code (1966 Repl. Vol.), Art. 21, Sec. 1 ("No estate * * * shall pass * * * un-

less the deed * * * shall be executed, acknowledged and recorded as herein provided * * *") ; Sec. 12 (similar language) and Sec. 29 ("Deeds of mortgage conveying any use, estate, or interest in land shall be executed, acknowledged and recorded as absolute deeds of the same").

Judge Naughton, after considering exhibits, testimony, memoranda of law and arguments, held that the deed of trust "is valid and enforceable between the parties thereto, there being no fraud in the inducement or execution thereof," dismissed the bill and authorized the continuation of the foreclosure.

In this Court the Adamses do not argue fraud or bad faith on Albee's part. They rely on the claim that their affidavits are null, void and of no effect, having been taken over the telephone by a notary in Albee's office in Pennsylvania, whom they never saw, and the claim that an unacknowledged deed of trust passes no estate and is invalid and ineffective even between the parties. Albee counters by asserting that the Curative Act of 1967 (Ch. 228 of the Laws of 1967, Code (1968 Supp.), Art. 21, § 99) validated defective acknowledgments in all deeds and deeds of trust executed prior to its effective date of June 30, 1967, and that the instant deed of trust, even if not legislatively validated, nevertheless created an equitable lien on the land described therein which a court of equity will enforce between the parties according to its terms. We find it unnecessary to discuss or consider whether the acknowledgment was merely defective or was void or the effect of the Curative Act of 1967 because, assuming for the purpose of decision, that the acknowledgment was, as the Adamses contend, entirely null and void and the deed of trust therefore completely unacknowledged and that the acknowledgment was not a defective acknowledgment validated by the Curative Act, we find that the deed of trust created an equitable lien fully valid as far as Albee and the Adamses are concerned.

"In equity, any agreement in writing, however informal, made by the owner of land, upon a valid consideration, by which an intention is shown that the land shall be security for the payment of money by him, creates an equitable lien upon the land. Such an

informal instrument or contract, by which the owner of land agrees or undertakes to secure his creditor upon the land, is ordinarily referred to as an 'equitable mortgage,' an expression which originated in the consideration that a transaction of this character, while absolutely ineffective at law, as not involving a transfer of the legal title, was effective in equity for the purpose for which a legal mortgage was ordinarily utilized, to secure the payment of money." 5 Tiffany, *Real Property* (3rd Ed.), § 1563.

See also 4 *American Law of Property,* Ch. II, §§ 16:21, 16:23, 16:27 and 16:30, in which the author says:

"By the very great weight of authority, ranging from cases so early that the attempted conveyance was by feoffment and failed because there was no livery of seizin down to the present, the courts have held consistently that a defectively executed mortgage or trust deed mortgage, although it fails to create a legal mortgage will be given effect as an equitable mortgage * * *.

"The very fact that the parties clearly tried to give a present legal mortgage would seem sufficient without more to establish the intent of the parties that the property be security from that time and, therefore, that the equitable mortgage in these cases could rest upon the rationale of an executed transaction."

Maryland decisions are in accord with the law set forth in Tiffany and the *American Law of Property.* In *Kline v. Inland Rubber Corp.,* 194 Md. 122, 136, Judge Markell for the Court found no equitable lien on the facts after noting that: "This Court has repeatedly recognized and enforced equitable liens." In *Tiernan v. Poor, et ux,* 1 G. & J. 216, Poor and his wife gave a mortgage to secure the payment of past due rent. The wife was not examined apart from her husband by the justice of the peace who took her acknowledgment as the law then required. The Court found it unnecessary to decide whether the instrument was a legal mortgage because if it were not, it clearly

was an equitable mortgage valid and enforceable between the parties. The Court, speaking through Judge Archer, said:

"The deed in this case was clearly intended to be a mortgage to secure the payment of the complainant's debt, and was no doubt meant by the parties to be clothed with all the formalities and solemnities necessary to give it a legal and effective operation as such. Its design and meaning was to secure a particular debt, and to charge it as a lien on the wife's separate property. If it be deprived of legal validity for the want of a privy examination, we are still at liberty to look at it as illustrating and evidencing the agreement of the parties, and will coerce its execution according to that original design. Such a course would be demanded by the first principles of equity. For what could be more inequitable than to permit a party to escape from the fulfillment of his contracts, by the mere omission of legal forms?—in which omission too, he may have been the sole actor, and in all cases a participator, and to allow him to reap the advantages from such omission, of all the consideration which constituted his inducement, for entering into the contract." [1 G. & J. 227-228]

*Tiernan* was followed by, among others, *Price v. McDonald*, 1 Md. 403, which held that despite the registry laws a deed with a void or legally ineffective acknowledgment will be enforced in equity except as against a bona fide purchaser without notice, and by *Carson v. Phelps*, 40 Md. 73, 99 (a trust may arise from a valid contract in writing for specific security), and by *Dyson v. Simmons*, 48 Md. 207, 214-216, where the acknowledgment lacked the statutorily required clerk's certificate. See also *Western Bank v. Union Bank*, 91 Md. 613, 620-621; *Jackson v. Trust Co.*, 176 Md. 505, 509-510; *Wethered v. Alban Tractor Co.*, 224 Md. 408, 421, *cert. denied*, 368 U. S. 830; *Pagenhardt v. Walsh*, 250 Md. 333; and compare *Lebrun v. Prosise*, 197 Md. 466, and *Lubin v. Klein*, 232 Md. 369.

The cases cited make it plain that the argument of the Adamses that the doctrine of equitable mortgages extends no further than to a mortgage defectively acknowledged and does not

reach an unacknowledged deed must fail. 1 *Jones on Mortgages* (8th Ed.), § 613, p. 855, expresses the Maryland rule when it says: "a mortgage recorded without having been acknowledged * * * is good as between the parties, and on breach of the condition of payment may be enforced against the mortgagor * * *."

The law of Maryland is therefore that where one who has the right and power to do so intends by a writing to create a lien on his land to secure another but fails to create a statutorily valid security instrument, his expressed intention may be enforced in equity by the other party to the instrument. The record leaves no doubt that Judge Naughton was fully justified in concluding that the Adamses fully understood the various papers they signed, including the deed of trust, that they intended to give Albee a deed of trust of the farm they owned to secure payment of the money they owed Albee for the building material, that Albee had performed as it had agreed to do, and that the Adamses must be held to be bound to Albee by their written agreements, despite the fact, as we see it, that they came to think they had made a bad bargain and resented the unanticipated expense and onerous effort to them of constructing the model house.

*Order affirmed, with costs.*