497 A.2d 794

**Rufus S. WATSON, Jr. et ux.**

v.

**Stacey Sue WATSON et al.**

**No. 140, Sept. Term, 1984.**

Court of Appeals of Maryland.

Sept. 16, 1985.

Dale A. Cooter (Linda G. Griffith and Cooter & Gell, in the brief), Washington, D.C., for appellants.

Arthur G. House (Hadley & House, on brief) Bethesda, for appellees.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

RODOWSKY, Judge.

In this case we face the question of whether a written antenuptial agreement in which the holder of record title to realty promises to convey an interest therein to an intended spouse in consideration of marriage can, without an effective deed, pass equitable title so that a post-marriage judgment against the holder is not a lien on the realty.

Rufus S. Watson, Jr. (Rufus), one of the plaintiffs, and Stacey Sue Watson (Stacey), one of the defendants, had been husband and wife, but were divorced during the period relevant to this case. Rufus owed Stacey money. Stacey obtained a judgment in the District Court of Maryland for the debt and that judgment was recorded, apparently on October 31, 1980, in the Circuit Court for Prince George's County. All parties agree that, in the course of supplementary proceedings which Rufus places as having occurred on December 4, 1980, Rufus exhibited to counsel for Stacey a paper writing purporting to deed a residential property titled solely in Rufus' name to Rufus and Teresa S. Watson (Teresa), as tenants by the entireties. The parties agree that Teresa and Rufus had married after his divorce from Stacey, but the record is silent on the precise date of that marriage. It is also agreed that the deed form exhibited at the supplementary proceedings, while signed by Rufus, contained no acknowledgment.

Stacey immediately caused a writ of *fieri facias* to be issued against the property described in the deed form, namely, lot forty-two in a subdivision in Prince George's County. That execution on judgment precipitated an action by Rufus and Teresa (collectively, "Plaintiffs") out of which the present appeal arises. Plaintiffs sued Stacey, the attorneys representing Stacey in the debt collection suit, and the Sheriff of Prince George's County. Count I of the declaration sought compensatory and punitive damages for alleged wrongful execution, and count II sought to enjoin execution proceedings against lot forty-two. By agreement between the parties the execution proceedings were stayed.

In response to a motion under former Maryland Rule 326, Plaintiffs filed a copy of their deed to lot forty-two as part of their declaration. The deed recites that it is "[m]ade this 29th day of November, 1979 ... in consideration of our mutual love and affection and other good and valuable considerations." There is an acknowledgment before a notary public dated January 12, 1981. The deed was recorded January 14, 1981, among the Land Records of Prince George's County. Above the printed heading, "THIS DEED," the words, "No consideration," appear in longhand.

The appeal before us evolves out of count II. Judgment on demurrer had been entered for the defendants on count I and that judgment has previously been affirmed by the Court of Special Appeals in an unreported per curiam opinion. That appeal also remanded for further proceedings on count II. During the course of further proceedings in the circuit court lot forty-two was sold at private sale, and a sum of money derived from that sale was first escrowed by the title attorney and later deposited in the registry of the circuit court. Although the court order authorizing the deposit does not specify the terms of the escrow, the parties seem to be in substantial accord that the fund will be paid to Stacey if the lien of her recorded judgment against Rufus attached to lot forty-two. A second issue which the parties consider to have been raised in the circuit court is whether the transfer by Rufus to Teresa and himself as tenants by the entireties can be voided as a fraud on creditors, even if the judgment lien had not attached to lot forty-two prior to the transfer.

Count II has never been amended from a claim for injunction. The last demurrer to it was overruled. There is no counterclaim by Stacey seeking, in the alternative, to set aside the deed as fraudulent. The record does not contain any stipulations of fact or any discovery material. There were no motions for summary judgment. In that posture, the case came on for bench trial on the merits on November 21, 1983. We are obliged to quote liberally from the transcript of those proceedings.

THE COURT: What is in front of me?

. . . .

[PLAINTIFFS' COUNSEL]:

What you are really determining is, as to this writ, whether or not that deed is senior to their writ, or whether that deed is [e]ffective vis-a-vis their writ, or whether that writ is or was enforceable against that property.

If this Court finds that their writ is senior to our deed, they get the amount of their judgment and the interest.

THE COURT: Let me ask you this, I could look in there and see that their deed is senior to your writ. It wasn't acknowledged until after they filed their writ. I looked through the file. I looked at the date your deed was acknowledged. And I looked at the date that the writ was filed. And the writ was filed before you acknowledged your deed.

[PLAINTIFFS' COUNSEL]: That does not make that writ senior to that deed.

THE COURT: Tell me why that is not a matter of law. Why do I need any proof?

[PLAINTIFFS' COUNSEL]: That issue is, I agree with you. The way I see it, there are two issues.

THE COURT: What's the second issue?

[PLAINTIFFS' COUNSEL]: That these defendants have raised, is whether or not the conveyance by Mr. Watson to the—to Mr. and the new Mrs. Watson is—the Uniform Fraudulent Conveyance Act is the—

THE COURT: Well—

[PLAINTIFFS' COUNSEL]: —that I think you need testimony on. That's the only issue you need testimony on.

THE COURT: If I rule on the first one, isn't the second one moot?

[DEFENDANTS' COUNSEL]: Yes.

[PLAINTIFFS' COUNSEL]: If you rule they're senior.

THE COURT: If I rule that they are senior, it makes the second issue moot, is that right?

[PLAINTIFFS' COUNSEL]: The problem is there is a case.

THE COURT: That says what?

[PLAINTIFFS' COUNSEL]: That says they are not senior.

THE COURT: What case is that?

[PLAINTIFFS' COUNSEL]: If the Court will indulge me just a minute.

In fact there are several cases.

Price v. McDonald, 1 Md., 403 [(1851)] cited—

THE COURT: Is that 1 Md.App. or 1 Md.?

[PLAINTIFFS' COUNSEL]: I just got the—if the Court will ind[ul]ge me, I got a copy of the case here.

I show it as 1 Md., 403, 1851 case.

THE COURT: 1851. What's your second authority?

[PLAINTIFFS' COUNSEL]: On a different issue, MLE, section 26. Under acknowledgements, section 26, [and] the case of Wood v. Owings, United States Supreme Court Case, 5 U.S., 239 [1 Cranch 239, 2 L.Ed. 94].

THE COURT: 5 U.S. How old is that case?

[PLAINTIFFS' COUNSEL]: 1803.

THE COURT: It's getting better.

[PLAINTIFFS' COUNSEL]: They're the law, Judge. They have not been, in any fashion, changed.

THE COURT: Are you telling me that you want me to rule—when was the deed recorded?

[PLAINTIFFS' COUNSEL]: Some time after the law-suit. I don't remember.

THE COURT: —that I can make out a deed—

[PLAINTIFFS' COUNSEL]: Yes, sir.

THE COURT: —I can make out a deed and stick it in my drawer—

[PLAINTIFFS' COUNSEL]: Well, you have to deliver it. Assuming delivery—

THE COURT: Just let me finish.

I could stick it in my drawer without notice to the world, and then somebody gets a judgment against me, and then attaches on that property, then I decide I didn't record this deed, or I have never acknowledged this deed, and I do it and I run down—and you want me—to tell me that those two cases say that based on those facts your deed has priority?

[PLAINTIFFS' COUNSEL]: Assuming delivery, that's exactly right. Assuming delivery. Of course, hypothetically, I didn't assume delivery [*sic*].

THE COURT: Anything you want to tell me?

Do you agree that it is a matter of law[?]

[PLAINTIFFS' COUNSEL]: I agree that that issue is a matter o[f] law.

THE COURT: Then I am going to rule, as a matter o[f] law, that—

[PLAINTIFFS' COUNSEL]: I understand what you're going to do. But before you do what you are going to do, may I comm[e]nd you to these cases? They say what they say.

THE COURT: I don't choose to follow those cases. I think that the modern world has outlived those cases. They may say what you say they say. This is 1983. I don't choose to follow those cases.

We are in Equity, I intend to do equity . . . . .
. . . .

[PLAINTIFFS' COUNSEL]: For purposes of the record, may I simply make a recitation of exactly what I see as the authorities here, just for purposes of the record? Because I am afraid we are going to be where we're going to be.

THE COURT: That is up to you.

[PLAINTIFFS' COUNSEL]: The key case, as to priority, is a case of Price v. McDonald. It is the case I suggested to you. It basically says that in the case of an unacknowledged deed, those who take senior to an unacknowledged deed are bona fide purchasers for value. Should this case have gone to trial we would have demon-

strated that [Stacey's counsel] and his client were not bona fide purchasers of value. And given the teachings of Price, that which we think is still the law, Mr. Watson and the new Mrs. Watson—

THE COURT: You mean to say that his wife was a purchaser for value?

[PLAINTIFFS' COUNSEL]: Yes, sir, that's exactly what I am telling you.....

Should the case have gone to trial we could have demonstrated, I think, that the new Mrs. Watson gave good and sufficient consideration for her interests in that property; and that that consideration was such that it was not a fraudulent conveyance within the meaning of the Uniform Conveyance Act. And indeed there was no intent on either [Mr.] Watson's part or the new Mrs. Watson's part to defraud creditors, which we think is required under that statute. In any event, she gave fair consideration. *Essentially what she did, was she agreed to marry the guy.* Marriage as consideration is spoken to in several cases. [Emphasis added.]

Without taking any evidence the court ruled as a matter of law in favor of the defendants. Judgment was subsequently entered on that ruling. Plaintiffs appealed to the Court of Special Appeals which affirmed in an unreported per curiam opinion. We granted the Plaintiffs' petition for certiorari. For reasons hereinafter set forth, we shall remand without affirmance or reversal.

At the time the circuit judge ruled the factors relevant to the legal issue before him can be summarized as follows:

| Factor | Date | Source |
|---|---|---|
| Antenuptial contract | Unspecified | Representation by Plaintiffs' counsel [1] |
| Signing of deed by Rufus | November 29, 1979 | Inference from date appearing on deed |

---

**1.** In his representations to the circuit court Plaintiffs' counsel did not specify whether it was a written or oral agreement under which

| Factor | Date | Source |
|---|---|---|
| | | copy produced in pleadings |
| Marriage | Sometime before or after, but in proximity to, November 29, 1979 | Inference from the use of the name "Teresa S. Watson" on the deed copy produced in the pleadings [2] |
| Judgment recorded | October 31, 1980 | Mutual agreement by parties in court papers |
| Deed acknowledgment | January 12, 1981 | Notary's certification of acknowledgment reproduced in deed copy |
| Deed recordation | January 14, 1981 | Stamp of circuit court clerk reproduced in deed copy |

Obviously the trial court analyzed this case exclusively under the recording statutes and applied rules applicable at law. Plaintiffs, particularly by their emphasis on *Price v. McDonald*, 1 Md. 403 (1851), sought to have the circuit court apply rules applicable in equity. Undoubtedly the concurrence by Plaintiffs' counsel in the view that it was a question of law whether the deed had priority over the execution was the basis for the circuit judge's proceeding to rule on the merits without hearing any evidence. Nevertheless, while the trial court was making exceedingly plain its view on the merits and its readiness to decide the case at that time, Plaintiffs' counsel retreated from his position that a question of law only was presented and proffered

---

Teresa agreed to marry Rufus in consideration of Rufus' titling lot forty-two in their names as tenants by the entireties. We will not infer from a silent record that the representation is limited to an oral agreement. In his brief to this Court Plaintiffs' counsel represents the agreement to be in writing.

2. Nothing in the pleadings precludes the possibility of testimony that the deed was signed before the marriage for delivery after the marriage.

that Teresa "agreed to marry the guy" in consideration of the deed.

We do not imply that, when a case comes on in open court for trial on the merits, it is necessary for counsel to proffer that which they propose to prove in order to be permitted to put on proof. Indeed, in *Goff v. Richards*, 19 Md.App. 250, 310 A.2d 203 (1973), the Court of Special Appeals held that former Md.R. 552 (now MD.R. 2–519) governing a motion for directed verdict left a trial judge without authority to grant a directed verdict in a civil case based on legal insufficiency in the content of an opening statement on behalf of the plaintiff. We hold simply that Plaintiffs' original position before the trial court, that the priority issue was one of law only, was not a waiver of trial. When the "proffer" went into matters of fact relevant to the priority issue, the trial judge should have conducted a trial before entering final judgment. We shall review, *infra*, the relevancy of the "proffer" to the priority issue.

Although the defendants have devoted considerable attention to claimed inconsistencies between positions taken in various court filings and oral arguments on behalf of the Plaintiffs, those arguments are to be resolved by a trier of fact and there has never been a factual determination assessing credibility in this case. Consequently our review is concerned solely with whether there could exist a state of facts which the Plaintiffs are not legally precluded from attempting to show and under which the lien of Stacey's judgment did not reach lot forty-two while it was held of public record solely in the name of Rufus.

We begin our analysis with the rules at law. If the sole issue in the case were the effective date of the deed as a deed, and if that issue were to be determined, by concession, solely from the face of the deed, then the result reached by the trial court would have been correct. Md. Code (1974, 1981 Repl.Vol.), § 3–201 of the Real Property Article (RP) provides:

The effective date of a deed is the date of delivery, and the date of delivery is presumed to be the date of the last acknowledgment, if any, or the date stated on the deed, whichever is later. Every deed, when recorded, takes effect from its effective date as against the grantor, his personal representatives, every purchaser with notice of the deed, and every creditor of the grantor with or without notice.

Absent any evidence bearing on the date of delivery, the statutory presumption is that the subject deed was delivered when acknowledged, namely, on January 12, 1981. When recorded on January 14, 1981, the statutory relation back to the presumed date of delivery spanned two days, to the date of acknowledgment, because that date was later than November 29, 1979, the date stated in the deed. At law the judgment lien, effective upon filing with the circuit court on October 31, 1980, would have been prior to the effective date of the deed and the judgment lien would have reached Rufus' legal title. *See* former Md.D.R. 621.

■ The presumption arising under RP § 3–201 is one of fact only and may be rebutted by evidence. *See Fike v. Harshbarger*, 273 Md. 586, 332 A.2d 27 (1975). Thus, it was open to the Plaintiffs to undertake to prove that delivery of the deed took place before Stacey's judgment was recorded so that, by the relation back of RP § 3–201, the deed would have priority at law over the judgment. Without implying that Plaintiffs are precluded from offering on remand evidence directed to the time of delivery, we choose to rest our decision on the theory argued by the Plaintiffs to the circuit court—that of an equitable transfer.

Maryland law has long recognized, protected, and enforced certain equitable interests in land even though those interests were not recognized, protected, or enforced at law. Principal illustrations of these equitable interests include the equitable lien and equitable conversion by contract. *Price v. McDonald, supra,* is an example of the former.

*Price* was a contest between the beneficiary of a deed of trust in the nature of a mortgage and one who had later purchased the same property at a sheriff's sale. The parties conceded that the deed of trust, which had been recorded with a defective acknowledgment, was to be treated as unrecorded. The Court, however, rejected the purchaser's argument that the deed of trust was invalid for failure to comply with the recordation statutes.

> It is very true that our registry laws would seem strongly to sustain the position assumed in the first objection. But whatever weight it might have been entitled to formerly, it is now too late to be relied upon as a ground of defence. The decisions in England, in the different States of the Union, and in our own State, are too numerous and too pointed in the opposite direction to require an argument, to show, that an equitable claim, like the one under the present deed of trust, will be enforced in a court of equity, except against a *bona fide* purchaser without notice. [1 Md. at 414–15.]

The purchaser at the sheriff's sale was held not to be a bona fide purchaser because he in fact knew of the deed of trust but had relied on the incorrect representation by the deed of trust debtor that the obligation thereby secured had been paid in full.

Chief Judge Hammond, writing for the Court in *Adams v. Avirett,* 252 Md. 566, 571, 250 A.2d 891, 893 (1969), summarized the *Price v. McDonald* line of cases.

> The law of Maryland is therefore that where one who has the right and power to do so intends by a writing to create a lien on his land to secure another but fails to create a statutorily valid security instrument, his expressed intention may be enforced in equity by the other party to the instrument.

*Adams* cited *Pagenhardt v. Walsh,* 250 Md. 333, 243 A.2d 494 (1968); *Wethered v. Alban Tractor Co.,* 224 Md. 408, 168 A.2d 358, *cert. denied,* 368 U.S. 830, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961); *Jackson v. County Trust Co.,* 176 Md. 505, 6 A.2d 380 (1939); *Western Nat'l Bank v. National*

*Union Bank,* 91 Md. 613, 46 A. 960 (1900); *Dyson v. Simmons,* 48 Md. 207 (1878); *Carson v. Phelps,* 40 Md. 73 (1874); *Tiernan v. Poor,* 1 G. & J. 216 (1829).

The principle underlying equitable liens is stated in *Dyson v. Simmons, supra,* 48 Md. at 215, to be "that if a party has power to charge certain lands, and agrees to charge them, in equity he has actually charged them; and a court of equity will enforce the charge." *Dyson* involved a defective acknowledgment of a mortgage, but we said that "as the instrument is at lest evidence of an agreement to convey, the conscience of the mortgagor is bound, and it will be enforced by a court of equity." *Id.* at 214.

More analogous to the problem before us is the doctrine of equitable conversion by contract. This Court has repeatedly held that the contract purchaser of realty becomes the equitable owner of the property, while the vendor retains a bare legal title. One result of the doctrine is that a judgment entered against the vendor after the contract has been made does not become a lien on the realty. A vendor's judgment creditor may not execute on the realty because the vendor, sometimes described as trustee for the purchaser, has a right to the balance of the purchase money but has no beneficial interest in the property. Equitable title is superior to a later judgment lien. *See, e.g., Kingsley v. Makay,* 253 Md. 24, 251 A.2d 585 (1969) (recognizing rule and holding that judgment against original purchaser entered after original purchaser had assigned contract to buy did not establish lien on property); *Caltrider v. Caples,* 160 Md. 392, 153 A. 445 (1931); *Cramer v. Roderick,* 128 Md. 422, 98 A. 42 (1916); *Valentine v. Seiss,* 79 Md. 187, 28 A. 892 (1894); *Hampson v. Edelen,* 2 H. & J. 64 (1806).

The rule of the foregoing cases was not altered by the general revision of the statutes relating to real property enacted by Ch. 349 of the Acts of 1972, effective January 1, 1973. We recently applied equitable conversion by contract in *Himmighoefer v. Medallion Industries, Inc.,* 302 Md. 270, 487 A.2d 282 (1985). In that case we held that the equitable interests obtained by contract purchasers from

the builder of a subdivision took priority over mechanics' liens judicially entered after the contracts of sale were made but before deeds to the purchasers were executed, acknowledged, and recorded. The opinion reasoned that a mechanics' lien as now authorized by Title 9 of the Real Property Article is in the nature of a money judgment. *See also* Soled, *Robin Hood Was Right, or, Never Trust a Sheriff: The Relationship Between Sheriffs' Sales and the Maryland Recording Act,* 38 Md.L.Rev. 633, 640–41 (1979).

None of the foregoing cases, as Stacey's counsel noted at oral argument, involve a transfer, or promise to transfer, to a spouse. We do not see why, in principle, that difference is one of substance if, under the facts in a particular case, a conveyance in performance of an antenuptial promise is not in fraud of creditors.

■ The doctrine of equitable conversion by contract rests on the maxim that equity considers as done that which ought to be done. Hence, an equitable conversion will place equitable title in the purchaser only if the contract is one under which the vendor would be subject to a decree for specific performance. As explained by Chief Judge Jeremiah Townley Chase for the Court in *Hampson v. Edelen, supra,*

> [a] contract for land, *bona fide* made for a valuable consideration, vests the equitable interest in the vendee from the time of the execution of the contract, although the money is not paid at that time. When the money is paid according to the terms of the contract, the vendee is entitled to a conveyance, and to a decree in Chancery for a specific execution of the contract, if such conveyance is refused. [2 H. & J. at 66.]

The commentators are in accord that equitable conversion by contract takes place only if the contract is specifically enforceable. *See* H. McClintock, *Handbook of the Principles of Equity* § 106, at 286 (2d ed. 1948); 4 J. Pomeroy, *A*

*Treatise on Equity Jurisprudence* §§ 1159 and 1161 (S. Symons 5th ed. 1941); 8A *Thompson on Real Property* § 4447, at 276 (J. Grimes ed. 1963 Repl.Vol.); 1 H. Tiffany, *The Law of Real Property* § 307 (B. Jones 3d ed. 1941).

■ In the case now before us we are not concerned with whether equity can specifically enforce a written promise to convey realty in consideration of a promise to marry while the contract remains executory on both sides. Here Rufus and Teresa have married. If one person promises in writing to convey an interest in realty to or for the benefit of an intended spouse in consideration of their marriage, and they in fact marry, that promise to convey is specifically enforceable by the promisee or by the promisee's issue. It has been said that "equity has jurisdiction to enforce the specific performance of an *ante* -nuptial agreement, fairly entered into between parties able to contract, in the same manner, and subject to the same restrictions, as other cases of the specific performance of contracts." *Gould v. Womack,* 2 Ala. 83, 91 (1841). Historically, the English Court of Chancery exercised the power to grant specific performance of settlements of property promised in marriage articles where the promises remained unperformed after marriage. *See, e.g., Sidney v. Sidney,* 3 P.Wms. 269, 24 Eng.Rep. 1060 (1734); *Cannell v. Buckle,* 2 P.Wms. 243, 24 Eng.Rep. 715 (1724); *Haymer v. Haymer,* 2 Vent. 343, 86 Eng.Rep. 476 (1678); 1 J. Vaizey, *A Treatise on the Law of Settlements of Property Made Upon Marriage and Other Occasions* 196–206 (1887); 25 Halsbury, *The Laws of England, Settlements* § 984 (1st ed. 1913); J. Madden, *Handbook of the Law of Persons and Domestic Relations* § 72, at 237 (1931); J. Pomeroy, *A Treatise on the Specific Performance of Contracts* §§ 31, 133 and 328 (J. Pomeroy & J. Mann 3d ed. 1926).

There is Maryland precedent for specifically enforcing a promise to convey real estate in consideration of marriage. The case arose out of an eighteenth century marriage settlement where the promisee, without a deed, entered into

possession of the property following the marriage.[3] In *Dugan v. Gittings*, 3 Gill 138 (1845), the action was filed in 1837 for specific performance of a promise made by Cumberland Dugan in 1798 to his daughter Margaret to build and give to her a home upon her forthcoming marriage. The house was built and Margaret and her husband occupied it. After her death and that of her husband, her children sued to obtain a deed to the property which had stood titled in the name of Cumberland Dugan until his death. A decree ordering the defendants to deed their interests of record to Margaret's children was affirmed. The Court said that the contract

> [h]aving been made in contemplation of, and as a marriage endowment, it has for its support a valuable consideration. It cannot be revoked or violated at the will of the party who made it. The marriage was a consideration which vested the interest in the donee against all the world; she is to be regarded as a purchaser, and as much so as if she had paid for the property an adequate pecuniary consideration. [3 Gill at 156–57.]

■ Further, marriage is valuable consideration under Maryland law, which is not unique in that regard. "There is no question as to the sufficiency of marriage as a consideration to support a pre-nuptial conveyance, even though it operates to the prejudice of creditors, unless the grantee was implicated in a fraud to be committed against their interest." *Braecklein v. McNamara*, 147 Md. 17, 21, 127 A. 497, 499 (1925). There, prior to his marriage, a man executed a deed, through a straw party, to himself and his intended wife as tenants by the entireties. The deed from the straw party was not recorded until after the marriage. The conveyance was upheld against a challenge by creditors, some of whom held judgments, none of which, however, seem to have antedated the recordation of the deed.

---

**3.** The promise was oral. We are not here concerned with the value of the decision as a statute of frauds precedent but with the power of equity illustrated by it.

And we said in *Levy v. Sherman*, 185 Md. 63, 67, 43 A.2d 25, 27 (1945) (quoting 26 Am.Jur. *Husband and Wife* § 277) that " '[a]n antenuptial settlement or agreement to the extent that it is executory must be supported by consideration, but marriage itself is consideration for such a settlement or agreement, and indeed, it is said to be perhaps the most valuable and highly respected consideration of the law in this as well as other cases.' "

In its unreported opinion in this case the Court of Special Appeals affirmed on grounds relating to consideration, as distinct from directly applying the recording statutes as the trial court had done. Limiting its consideration of the issue of consideration to the four corners of the deed dated November 29, 1979, and viewing that consideration to be solely love and affection, the intermediate appellate court concluded as a matter of law that the deed was invalid against an existing general creditor for lack of "valuable" consideration.[4] In this Court Stacey also presents a fall back position to the above analysis. She argues that the written deed bearing the date of November 29, 1979, by reciting love and affection as consideration, would be contradicted by proof that the true consideration was a promise to marry and proof to that effect must be excluded. Consequently, Stacey concludes, no remand is required. Plaintiffs, on the other hand, say they can show that the "other" consideration was a promise to marry. There is no purpose to be served, other than to render an advisory opinion, in exploring the ramifications of these arguments at this time. If, as represented, there is a written antenuptial agreement, the analysis of parol evidence arguments should be done in terms of that instrument. In any event, the facts concern-

---

4. "Valuable" is used by the Court of Special Appeals in its unreported opinion as a term of art and in the sense in which the term is employed in cases decided under 13 Eliz. Ch. 5 (1570), I Alex.Brit.Stat. 378 (W. Coe 2d ed. 1912), which was a fraudulent conveyancing statute.

ing the dates of the marriage, of the agreement, of the execution of the deed and of its delivery should be the subject of examination, cross-examination, and fact finding.

■ First principles therefore lead us to conclude that an antenuptial contract in which the legal owner of land promises to convey an interest therein to an intended spouse will, upon marriage, give rise to an equitable interest of the purchaser in the realty so that the bare legal title of the vendor is not reached by the lien of a post-marriage judgment against the vendor. Stacey urges that we should not adopt such a rule for contracts made in contemplation of marriage, predicting that the rule will promote fraud. We reject a per se rule which would void any conveyance between spouses and which would, for example, void even conveyances made in consideration of marriage by persons who, by their assets and earnings, would be quite capable of paying existing creditors. *See Braecklein v. McNamara, supra,* 147 Md. 17, 127 A. 497.

A question lingers, however, because of the imperfect analogy between sales contracts in the cases applying equitable conversion by contract and an antenuptial covenant to convey. In the typical vendor-purchaser context there is a monetary consideration and not the consideration of marriage. Our analogy to the rights of a judgment creditor of the vendor under Maryland law is a reference to the rule prevailing in a substantial number of states, but it is a minority position. *See* Lacy, *Creditors of Land Contract Vendors,* 24 Case W.Res. 645, 647 & n. 8 (1973) (Lacy). That author suggests that the choice of the rule governing whether execution will lie against land titled in the vendor, based on a judgment against the vendor entered after contract and before conveyance, should take into consideration other remedies available to the creditor. Where the land under contract is to be sold for money, the vendor's judgment creditor can lay a writ of garnishment in the

hands of the purchaser for credits due to the vendor. *See* MD.R. 3–645. The writ of garnishment does not reach a promise to marry or marital obligations. This distinction could be a principled basis for a separate rule applicable to antenuptial contracts.

Lacy's conclusion is that the fairest procedure in a vendor-purchaser-creditor contest is to bring all parties before the court with a creditor's bill. That is essentially how the instant case should have proceeded in the circuit court. What happened here is that the cart has gotten ahead of the horse. Had a full trial on the merits been held, the court could have determined whether there was in fact and law, as of a specific time, a contract to convey. If so, the court could then have determined whether a conveyance made pursuant to that contract was void as a fraud on creditors. In a case in which no conveyance has yet been made pursuant to the contract, a court could still determine whether the contract is bona fide and one which a court of equity would specifically enforce. If the antenuptial promise to convey is one which equity would specifically enforce, then, under our vendor-purchaser cases, an equitable title passes to the purchaser. If the antenuptial promise to convey is found to be part of a fraud on creditors, equity would not assist the fraud and no equitable title would pass. Consequently, we see no need for a special rule applicable to antenuptial contracts.

We therefore remand pursuant to Maryland Rule 871.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT PURSUANT TO MARYLAND RULE 871 FOR THE ENTRY OF A JUDGMENT REMANDING THE CASE, WITHOUT AFFIRMANCE OR REVERSAL, TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO ABIDE THE RESULT.*